<div style="margin-left">CITY OF NEW OR-<br>LEANS<br>v.<br>PHILIPPI.</div>

of the municipal councils was to be exercised prospectively, is the provision in the 7th section of the statute, that whenever, from an extraordinary cause, an additional tax may become necessary in the course of the current year, that is to say, a tax, in addition to that which shall have been voted within the year, predicated upon an estimative budget of expenditures, in such case a new element is called into action; and the additional tax must be sanctioned by a majority of the legal voters of the municipality.

We are of opinion that the council of Municipality No. Three, in their ordinance of the 1st of September, 1851, have departed from the path of action marked out for them by the statute of the 18th of March, 1850; and that so long as the latter statute was in force, they could not legally inforce a tax for a past year. A by-law of a corporation, which is contrary to a law of the State, is void. See Angell & Ames on Corporations, chap. 9, sec. —. And where the law enables a corporation to make by-laws or ordinances in certain cases, and for certain purposes, its power of legislation is limited to the cases and objects specified—all others being excluded by implication. Angell & Ames on Corporations, chap. 9, sec. 1. La. Code, Art. 424, 436. *Blanc* v. *Mayor*, 1 Mart. Rep. 125. *L. S. Bank* v. *Or. Nav. Co.* 3 Ann. 308 to 311.

In accordance with these principles, our predecessors have, on several occasions, pronounced the nullity of municipal ordinances which were unauthorized by the charter of the corporation, or contrary to laws subsequently enacted. 2d Ann. 611. 3d Ann. 294. 6 Ann. 605. In the present case, the reason of holding to this doctrine is particularly obvious, because the ordinance imposing the tax, professes to be based upon a budget or estimate prepared and published according to the Act of 1850, while it is in truth a departure from, not to say an evasion of, the substance and letter of that law.

Judgment of the District Court reversed, and judgment for defendant, with costs in both Courts.

---

## STATE *v.* ANTONIO D'ANGELO.

Testimony of a pre-existing enmity between the accused and the deceased, on a previous quarrel or grudge, is admissible to prove malice.

As a general rule it is incompetent for the accused, on an indictment for murder, to offer evidence of the general bad temper and quarrelsome disposition of the deceased.

The bill of exceptions stated that there was no direct proof who fired the pistol, or who killed the deceased. *Held:*—This submits a question of fact, as a motion for the reversal of a verdict and judgment in a criminal case, &c., and it is not within the cognizance of the Supreme Court.

APPEAL from the First District Court of New Orleans, *Larue*, J. *Morse*, (Attorney General,) for the State.

*Grymes & Reid*, for the accused:

1. We contend that the verdict rendered in this case is contrary to law, because it was rendered on incompetent evidence, and on remote and irrelevant facts not admissible. 1 Stark. on Ev., p. 39, sec. 21 and 22; 1 Chit. Crim. Law, 459.

2. The court erred in refusing evidence to establish the fact that the deceased had innumerable enemies of a deadly character, any one of whom was more liable to have committed the offence; and the overruling this evidence prejudiced the minds of the jury, and destroyed the hypothesis and presumption

that a person, other than the accused, might have committed the murder. 1 Stark. on Ev. p. 506, secs. 75 and 76. (*Chandler's* case *per con.*, 5th An. 489.)

3. There is no link or coincidence in the evidence to connect the prisoner with the pistol, or the crime charged, or to establish malice. 1 Stark. Ev., p. 485, sec. 66. *Queen* v. *Bird & Wife*, 2 Eng. C. L. Rep. 428.

BUCHANAN, J. The defendant and appellant has been found guilty of murder "without capital punishment" by the verdict of a jury duly empannelled. Having failed in an effort to obtain a new trial, and having been sentenced upon the verdict to imprisonment at hard labor for life, he has appealed.

His counsel relies upon a bill of exceptions reserved upon the trial in the Court below; and assigns for error in the proceedings, 1st, That the District Court admitted evidence on the part of the State to prove that enmity had previously existed between the accused and the deceased *Cutino*. 2d, That a witness being called to the stand on the part of the accused to prove the vile temper of the deceased, and to shew that he had innumerable enemies, any one of whom might have killed the deceased, (as there was no direct evidence to prove who fired the pistol or who killed the deceased,) the District Attorney objected to the admissibility of the evidence, and the objection was sustained by the Court and the evidence rejected.

1stly. The evidence of a preexisting enmity between the accused and the deceased was properly admitted, to prove malice. The case of a previous quarrel or grudge, is one of those stated by all the authorities, as evidence of malice. 1st Hale's pleas of the Crown, 451; 4th Blackstone's Com. 199; Russell on Crimes, 614; Greenleaf on Ev., part 5, sec. 145.

2dly, As a general rule, it is incompetent for the accused to offer evidence of the general bad temper and quarrelsome disposition of the deceased, on an indictment for murder. *Chamblis'* case, 5th An. 489; *Tilley's* case, 3d Iredill's North Carolina Reports, 424. But the case suggested by the bill of exceptions, and insisted upon by the counsel of the accused, as an exception to the general rule, is this: that there was no direct proof before the jury to show that the pistol shot by which the deceased was killed, was fired by the accused; and that after the prosecution had offered evidence of a previous enmity between the deceased and the prisoner, the latter offered to prove "the vile temper of the deceased, and that he had innumerable enemies," in order to rebut the presumption created by the evidence for the State.

An obvious objection to remanding this cause for the purpose of receiving such evidence, for the purpose stated, even supposing it to be admissible for any purpose, is the extreme vagueness of the proposition. It is not stated that the evidence of enmity towards the deceased, proposed to be given, had reference to any other person than the accused, present when the pistol was fired, or in fact to any designated person or persons whatever. The language of the bill is "innumerable enemies, any one of whom might have killed the deceased." It would surely aid but little the administration of justice to produce witnesses before the jury upon a criminal trial, in order to express speculative opinions in relation to the possibility of the commission of a crime. The province of the witnesses is, to relate the facts within their knowledge; that of the petit jury to apply those facts to the guilt or innocence of the prisoner at the bar. On a trial for murder, the authorities tell us that it must be proved that the deceased has been killed by the act, or by the procurement or device of the accused. But that proof may be direct, or circumstantial. The facts going to make up such proof, are facts for the consideration of the jury, and cannot be reviewed by this Court.

STATE
v.
D'ANGELO.

And this brings us to the most important objection to this branch of the appellant's bill of exceptions—to wit: that it submits to our consideration, a question of fact, as a motive for the reversal of a verdict and judgment in a criminal case. The record shows that a true bill was found by the Grand Jury of the parish of Orleans against *Antonio D'Angelo* for the murder of *André Outino*, by shooting him with a pistol; that he was arraigned and pleaded not guilty; was tried before a jury of the vicinage, upon the said issue; that six witnesses were sworn for the State, and two for the prisoner; that the jury returned a verdict of guilty; that *D'Angelo* moved for a new trial, on the ground that the verdict was contrary to law and evidence; that the new trial was refused after argument.

It thus appears, not only that the jury were convinced by the proof of the guilt of the defendant, but that the Judge who tried the cause, participated in that conviction. The bill of exceptions states that there was no direct proof who fired the pistol, or who killed the deceased. At least, it would seem then, in justification of the verdict, that *there was a pistol fired*, and that *there was a man killed*. But can this Court tell, are we even permitted to inquire, what facts in the evidence rendered it probable that the pistol was fired, and the man killed, by the accused? Yet, in our absolute *ignorance of the facts proved*, we are expected to direct the attention of the future jury to other facts, that may *possibly* be proved, and being proved, may *possibly* have an effect upon their verdict.

We think the District Judge did not err in rejecting evidence of the bad temper of the deceased, and that he had many enemies. And we lay out of view altogether, as a matter not within our cognizance, the fact stated in the bill of exceptions, that that there was no direct proof who fired the pistol, or who killed the deceased.

Judgment affirmed, with costs.

SLIDELL, C. J. As a general rule, the character of the deceased cannot be inquired into, in an indictment for murder. *State* v. *Chandler*, 5 Ann. 489. I am not prepared to say there are no exceptions to this rule.

But the case suggested by the bill is this—that there had been no *direct* evidence to show that the pistol shot by which the deceased was killed was fired by the prisoner, and that after the prosecution had offered evidence of a previous enmity between the deceased and the prisoner, (which was clearly admissible to show malice) the prisoner offered to prove the vile temper of the deceased, and that he had many enemies, any one of whom might have killed the deceased.

If there had been an accompanying offer to prove the presence of some other enemy or enemies of the deceased at the time of the homicide, I am not prepared to say the evidence should have been excluded under the circumstances stated in the bill of exceptions, to wit: that there had been no direct evidence to show that the pistol shot by which the deceased was killed was fired by the deceased. But the general proposition that the deceased had many enemies, any one of whom might have killed the deceased, was too vague, and evidence in support of it was properly rejected.

OGDEN, J. I concur in the above opinion.