560 So.2d 450 (1990)
STATE of Louisiana, Appellee,
v.
Morris HARRISON, Appellant.
No. 21225-KA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
*451 Raymond Lee Cannon, Tallulah, for appellant.
William J. Guste, Jr., Atty. Gen., James D. Caldwell, Dist. Atty., Moses J. Williams and Felicia T. Williams, Asst. Dist. Attys., for appellee.
Before HALL, HIGHTOWER and LINDSAY, JJ.
HALL, Chief Judge.
Morris Harrison was convicted of second degree murder, LSA-R.S. 14:30.1, in the shooting death of Buster Harris. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. He appealed his conviction and sentence asserting nineteen assignments of error.
Assignments of error numbers one through nine, and fourteen through sixteen were neither briefed nor argued and therefore are considered abandoned. U.R.C.A. Rule 2-12.4; State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976). For the following reasons the other assignments are found to be meritless and the defendant's conviction and sentence are affirmed.

FACTS
On the morning of October 27, 1987, Buster Harris was found lying face down near his front yard dead of gunshot wounds, one to the middle of his back and one to the back of his head. The shots were fired at close range from a .22 caliber rifle.
The police investigation focused on defendant Morris Harrison and Joseph "Jackie-Boy" Robinson as suspects. Also closely involved was Donnell Williams. Subsequently, Morris Harrison was charged and later indicted by a grand jury for second degree murder. Joseph Robinson was initially charged by police with second degree murder but was later formally charged with being an accessory after the fact. Donnell Williams was also charged as an accessory after the fact to which he pled guilty during the course of Harrison's trial before testifying at the trial.
Testimony at the trial shows that the defendant had been living with Geraldine Phillips until October 22, 1987, approximately one week before the murder. Geraldine Phillips had been seeing Buster Harris for some time prior to the breakup of her relationship with Morris Harrison. Ms. Phillips testified that the defendant stated that he would rather see her dead than with Buster Harris.
She stated that the last time she saw Buster Harris alive was just prior to his murder. Ms. Phillips and the victim had spent the evening prior to his death together *452 at his home. At approximately 4:30 a.m. on October 27th, Harris and Ms. Phillips left his home and began walking the short distance to Ms. Phillips' home. She testified that she saw a two-toned beige and tan van pass them as they were walking. The van was the same van in which Morris Harrison had come to visit her on the previous day. Harris and Ms. Phillips reached her home at around 4:45 a.m.
Carrie Harvey, aka Carrie Scott, a woman with whom the defendant was living since his breakup with Ms. Phillips, testified that on October 26, 1987 the defendant borrowed the brown and tan van, which was in her possession and owned by her employer. He was not at home that night and she first saw him when she got up at about 6:30 the morning of the 27th.
Donnell Williams testified that the defendant picked him up on the evening of October 26th in a brown and beige van. The two then drove around visiting and drinking. During the evening the defendant asked several people to lend him a .22 rifle, including Albert Williams, Abe Wiggins, Lieutenant Wiggins, Jr., and Lieutenant Wiggins, Sr. They then returned to Barbara Johnson's house where they had stopped by earlier. The defendant went inside while Donnell Williams stayed in the van. When the defendant returned he was carrying a .22 rifle with a black stock and a single barrel. When presented with the murder weapon at trial Donnell Williams testified that it appeared to be the same gun that he saw in the defendant's possession that night.
Barbara Johnson testified that she had a .22 rifle hidden under her bed at the time of the defendant's visit, but that she and the defendant did not discuss the gun. She later discovered the rifle was missing. At trial, Barbara Johnson identified the .22 caliber rifle shown to her, and later identified as the murder weapon, as the one she had hidden under her bed on the night the defendant visited.
Donnell Williams testified that after the defendant returned to the van with the weapon, he and the defendant began to search for ammunition. The two went to the houses of Samuel Baker, James Harris and Elza Phillips and then to Zelma Brown's where the defendant obtained yellow-jacket cartridges, the same type which were determined to have been used to kill Buster Harris. Zelma Brown testified that he gave the defendant yellow-jacket cartridges. Donnell Williams testified that after leaving Zelma Brown's house the defendant sat in the driveway, loaded the gun, and said that he was going to kill Buster Harris. They drove to a dead-end street where the defendant test-fired the rifle three or four times through the driver's side window.
At some point during the evening Joseph "Jackie-Boy" Robinson joined the defendant and Donnell Williams in their wandering. The testimony is inconsistent about when this occurred in the order of events of the evening.
According to Williams, after test-firing the rifle they rode to Buster Harris' house where Jackie-Boy and the defendant got out of the van. The two were gone approximately ten minutes and upon their return to the van Jackie-Boy told Williams that no one had answered the door. This testimony is generally consistent with that given by Geraldine Phillips who testified that there had been two knocks at the door while she was present with Buster Harris. She stated that the first knock was about 4:00 a.m. and was not answered. The second knock occurred about 15 minutes later and was answered by Buster Harris. Upon his return to the bedroom he told her that it was Jackie-Boy and a car-load of other people. Donnell Williams said nothing of a second knock at the trial, and his testimony concerning the timing differed from that of Ms. Phillips. Williams testified that they went to Harris' house around 2:30 a.m. Jackie-Boy denied having gone to Buster's house at any time that night.
The testimony was generally consistent that defendant took Donnell Williams home about 4:30 in the morning.
Donnell Williams testified that defendant came to his house about 6:00 a.m., said he had decided not to go hunting, and asked Williams to keep the rifle for him. When *453 Williams heard about the shooting later that morning, he took the rifle and threw it into a pond. After he become involved in the investigation, Williams took police officers to the pond where the rifle was retrieved.
Raymond Doyel testified that the day before the shooting Harrison came by the mechanic's shop where he was working and told him he was going to kill Buster Harris and that he was going to get Geraldine too.
Kenny Harris, brother of the victim, over defendant's objection, testified that Buster told him that defendant had threatened his life.
Summarizing, there was substantial evidence from numerous witnesses that defendant and Geraldine Phillips broke up over her relationship with Buster Harris, that defendant was upset and jealous, that defendant went to great efforts to obtain a .22 rifle and ammunition, that he said he was going to kill Harris, that he went to Harris' home in the early morning hours, that he later saw Harris and Geraldine Phillips walking to her home, that defendant was in the vicinity when Harris was shot with the rifle and ammunition defendant had obtained, and that defendant had the rifle after the shooting.
Through cross-examination of state witnesses, the defense sought to elicit facts tending to show that other persons, including Jackie Boy Robinson, Donnell Williams, and a man named Sam Crockett who was the boyfriend and business associate of Barbara Johnson, committed the murder rather than the defendant. The defense rested without offering any evidence.

ASSIGNMENTS OF ERROR NOS. 10 AND 18

Assignment of Error No. 10: "The trial court erred in disallowing, as irrelevant, the defense's cross-examination of witness Willie Thomas about whether Sam Crockett (also a murder suspect) was staying with Barbara Johnson in Tallulah, Louisiana, at the time of the instant homicide, depriving appellant of the opportunity to make out his defense and rebut the State's case in chief through cross-examination."

Assignment of Error No. 18: "The trial court's ruling disallowing defense questioning of Case Agent Dobson about whether he, at the time of the instant trial, had stopped investigating the homicide of Buster Harris denied appellant the right to make out his defense and to demonstrate that other persons had motive, opportunity, and were in the area of the murder."
Willie Thomas, a state witness, testified on direct examination about seeing defendant in front of Barbara Johnson's house with a gun on the night of the murder. On cross-examination he was asked if he knew Sam Crockett, if Crockett was in town in October, and if Crockett was staying with Johnson at that time. The witness answered all these questions in the affirmative. At this point the judge asked how this was relevant and the jury was removed. The state objected to the question on the grounds of irrelevancy in that there had been no evidence to connect Crockett with the murder. Defense counsel stated his position that Sam Crockett was a likely suspect in the homicide. The court allowed the defense an opportunity to establish a predicate or foundation for further questioning of the witness about Crockett. The defense called state police detective Daniel Dobson, the case agent and chief investigator of the crime, and established that Crockett and Johnson operated a service station and pawn shop in the neighborhood, that the service station was suspected to be a front for drug operations, that Crockett was a felon and drug pusher and was living with Johnson, that Jackie-Boy Robinson worked at the service station, and that Detective Dobson understood Crockett had been arrested and convicted for two second degree murders or attempted murders in Ouachita Parish involving Crockett sending persons to kill others in drug territory.
Finally, the defense attorney asked Detective Dobson: "Have you stopped investigating the Morris Harrison case in connection with the death of Buster Harris?" At this point, the district attorney objected on the grounds that the defense attorney was only entitled to information on the investigation *454 of Morris Harrison and that what was going on outside the instant case was privileged information. The defense attorney stated in response: "Well, that ends my predicate." Then, after a bit more discussion on the issue of whether relevance had been shown, and once the court determined that it had not, the defense attorney requested that his objection be noted for the record. Following the court's admonishment to the defense attorney that he would not be allowed to "pursue that thing where there's no connection," the jury was called back in. There was no ruling before the jury on the original objection, so Thomas' brief testimony concerning Crockett stood as elicited. Defense counsel asked no further questions of the witness.
A defendant has the right to present any and all relevant evidence bearing on his innocence unless prohibited by our federal and state constitutions, by law, or by jurisprudence. State v. Vaughn, 431 So.2d 358 (La.1982); State v. Patch, 470 So.2d 585 (La.App. 1st Cir.1985) writ denied 475 So.2d 358 (La.1985). To be admissible, the evidence must be relevant to an issue material in the case. LSA-R.S. 15:435; Cf. LSA-C.E. Art. 402 (this case was tried prior to January 1, 1989, the effective date of the Code of Evidence). A material issue is one which is of consequence or importance to the case. State v. Ludwig, 423 So.2d 1073 (La.1982). Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. LSA-R.S. 15:441; LSA-C.E. Art. 401. The statutory rule is substantially identical to Article 401, derived from FRE 401, which provides that "relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Ludwig, supra.
Even relevant evidence may be excluded, in the discretion of the court, if its admission would cause undue delay, confuse the issue, mislead the jury, result in unfair surprise, or otherwise prejudice the opposing party. State v. Vaughn, supra; State v. Ludwig, supra, Cf. LSA-C.E. Art. 403.
In this case the defendant's defense strategy was to show that someone other than the defendant committed the murder. Thus, evidence tending to establish that another had the means, opportunity and motive to commit the murder would be relevant to the defendant's defense. See State v. Patch, supra; State v. D'Angelo, 9 La.Ann. 46 (1854); State v. Johnson, 30 La.Ann. 921 (1878). In State v. Jenkins, 134 La. 185, 63 So. 869 (1913), the court stated:
"... the accused may suggest and offer to prove facts from which, in his opinion, the jury might reasonably infer that a particular person, other than he, was more likely to have committed the crime, in which case the question for the court to consider is whether the facts suggested, if proved, would bring the particular person referred to into such relation with the crime itself as to establish either a reasonable hypothesis of his guilt or a reasonable doubt of the guilt of the defendant."
Here, the information elicited from the witness Thomas concerning Sam Crockett did not even remotely tend to make it more probable or less probable that Sam Crockett was involved in the killing of Buster Harris. The facts elicited did not tend to bring Crockett in such relation to the crime as to establish a reasonable hypothesis of his involvement or to cast reasonable doubt on the participation by defendant in the crime.
The defense was given full opportunity to develop, outside of the presence of the jury, facts that would show the relevance of testimony concerning Sam Crockett. The only evidence offered was the examination of Detective Dobson. No other witnesses were presented. The defense could have further questioned Thomas outside of the presence of the jury to show what additional facts defendant wished to elicit linking Crockett to the crime, but did not do so. At no point later in the trial did the *455 defense bring out any facts tending to show the relevancy of this line of inquiry.
Unlike cases in which error has been found in excluding evidence of a third party's involvement as a defense to a crime, defendant in this case does not point to any specific evidence that was excluded. For instance, in Jenkins the defendant wanted to introduce evidence concerning persons other than the defendants who were seen in the vicinity of the crime and who threatened the victim. In Ludwig, the defendant who was charged with killing the victim wanted to introduce evidence that the wife of the victim had shot him a few months earlier. In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), cited by defendant, the defendant proposed to introduce evidence that a third person confessed to the murder with which he was accused. Here, defendant does not tell us, nor did he tell the trial court, what further questions would have been posed or what further evidence linking Crockett to the crime he hoped to produce. Defendant had the opportunity to pursue his cross-examination of the witness and to establish the relevancy of his evidence before presenting it to the jury but failed to do so.
At the time and in the posture that the issue was presented to the trial court, the court correctly ruled that the inquiry concerning Sam Crockett was irrelevant. Even if the evidence had some slight relevancy, the ruling was justified on the basis that its slight probative value was outweighed by the risk of confusing and misleading the jury. See State v. Ludwig, supra. Assignment of error no. 10 is without merit.
Contrary to defendant's assertion, the trial court did not disallow the question to the detective about whether he had stopped investigating the homicide. After the state voiced an objection and before the court ruled on the objection, defense counsel announced that the predicate was ended. The record of the proceeding does not support an inference that the defense was cut off from further examination of the detective or from calling other witnesses to establish relevancy. Assignment of error no. 18 is without merit.

ASSIGNMENT OF ERROR NO. 11

Assignment of Error No. 11: "The trial court's ruling allowing Daniel Dobson, the case agent, to conclude that Sam Crockett had no involvement with the homicide of Buster Harris was prejudicial error."
The defendant argues the trial court erred in allowing Daniel Dobson, the case agent, to testify as to his conclusion that Sam Crockett had no involvement with the homocide of Buster Harris. During the state's case in chief, the district attorney questioned Detective Dobson about the ammunition found in the investigation of Buster Harris' homicide. Daniel Dobson responded:
DANIEL DOBSON: There was one weapon that Mr. Churchman tested that was a handgun recovered from Barbara Johnson's house at the time of the arrest of Mr. Crockett. It was Remington ammunition, but it was something other than yellow jacket, and I didn't have any personal dealings with that particular case. That weapon was seized because it was in the possession of a felon at the time of his arrest, and because it came from the same house, we had it tested just in an abundance of caution.
MOSES WILLIAMS: Okay. Now, the arrest of Mr. Washington or Crockett, Sam Crockett at Barbara Johnson's house, could you tell us when this was in relationship to the, the murder?
DANIEL DOBSON: Several weeks, if not two or three months after we had arrested Mr. Harrison, and to my knowledge has no reference to this case in any fashion. Other than he, he was
RAYMOND CANNON: Objection, Your Honor.
The defendant argues in brief that this testimony was an opinion on the guilt of the defendant and invaded the province of the jury. As is evidenced by the record, Detective Dobson was explaining the actions taken by the police department in a *456 unrelated matter involving Sam Crockett and was not expressing a conclusion or opinion as to Crockett's involvement in the instant case. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 12

Assignment of Error No. 12: "The trial court's denial of defendant's cross-examination of the State's witness, Daniel Dobson, about the credibility and convictions of other witnesses was prejudicial error."
The defendant next assigns as error the trial court's restriction of the cross-examination of case agent Daniel Dobson about the credibility and convictions of other witnesses. During the presentation of the state's case-in-chief Detective Dobson testified concerning the steps in his investigation of the murder and the conclusions reached by him during this investigation. During the course of his testimony he mentioned that Kenneth Brown and Leonard Wilkins had been arrested at the service station on drug charges some time after the Harris homicide. Brown at first said he had seen Jackie-Boy Robinson kill Buster Harris, but investigation revealed this was untrue and Brown was trying to win favor in connection with the charges against him. Detective Dobson also mentioned Donnell William's role in the events surrounding the murder. On cross examination defense counsel sought to probe the thoroughness of the investigation of Detective Dobson. The questioning which provoked the state's objection concerned the criminal records of Brown, Watkins, Williams and defendant Harrison. The following colloquy took place:
RAYMOND CANNON: Did you find out in your investigation whether either Kenneth Brown or Wilkins had been convicted of a crime?
DANIEL DOBSON: I believe they've both got records.
RAYMOND CANNON: What's on, starting with Kenneth Brown's record?
DANIEL DOBSON: I don't have it. I don't recall. Drug charges, as I recall.
RAYMOND CANNON: What's on Wilkins' record?
DANIEL DOBSON: I don't recall. It's a record of arrest, and it may very well be drug charges. I just don't recall.
RAYMOND CANNON: Did you check Morris Harrison's record?
DANIEL DOBSON: Yes sir, I did.
RAYMOND CANNON: What's on Morris Harrison's record?
DANIEL DOBSON: To the best of my knowledge, Mr. Harrison has no previous record of arrests.
RAYMOND CANNON: Did you check Jackie Robinson's record.
DANIEL DOBSON: I did.
RAYMOND CANNON: What's on his record?
DANIEL DOBSON: Felony convictions, one for armed robbery, I believe.
RAYMOND CANNON: What else?
DANIEL DOBSON: I don't recall. I know there's more than one charge.
RAYMOND CANNON: Did you check Donnell Williams' record?
DANIEL DOBSON: Yes sir.
RAYMOND CANNON: What's on his record?
DANIEL DOBSON: Arrests for drug charges, I believe.
RAYMOND CANNON: What else?
DANIEL DOBSON: I can't recall specifically what are on those, those arrest sheets without being able to refer to them.
MOSES WILLIAMS: Your Honor.
RAYMOND CANNON: But you are the case agent, aren't you?
MOSES WILLIAMS: Your Honor, we're going to object.
The state objected on the grounds that the evidence was irrelevant and that the line of questioning was an improper attack on the potential witnesses' character and credibility prior to their testimony. Defense counsel argued that he was not attacking the credibility of the potential witnesses but was attacking the foundation of the detective's investigation and conclusions for not pursuing leads as to other suspects. The trial court noted that criminal convictions did not amount to leads. The court sustained *457 the state's objection stating that the proper time for attacking the credibility of a witness was after that witness had been sworn and advised the jury that the answers about prior convictions were inadmissible until the witnesses are called. Although defendant stopped his cross-examination of the detective when this objection was sustained, the court made it clear in its ruling that defense counsel was free to proceed with full cross-examination and that if he could show relevance of the convictions, they would be admitted.
The defendant argues that the questioning was not an attack on the credibility of witnesses, but rather was intended to discredit the detective concerning the thoroughness of the investigation performed by him of other potential perpetrators of the homicide.
The right of cross-examination is one guaranteed by both the federal and state constitution. Cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Nash, 475 So.2d 752 (La. 1985).
The three main functions of cross examination are (1) to shed light on the credibility of the direct testimony; (2) to bring out additional facts related to those solicited on direct; and (3) to bring out additional facts which tend to elucidate any issue in the case; McCormick on evidence, Section 29 at 63; LSA-C.E. Art. 611(B); State ex rel. Nicholas v. State, 520 So.2d 377 (La.1988). Subject to the discretion of a trial court to preclude repetitive and unduly harassing questioning the cross-examiner is permitted to delve into the witness's story to test the witness's perceptions and memory. The examiner is further allowed to impeach or discredit the witness.
As case agent, Detective Dobson, having expressed conclusions based on his investigation, was subject to cross examination concerning the extent and depth of his investigation into the homicide of Buster Harris. In the context of cross-examining the police officer as to the thoroughness of his investigation and pursuit of all leads, the defense was entitled to probe into information the officer had that might warrant further investigation of persons with some connection with the events surrounding the crime. The trial court should not have restrained defense counsel's cross-examination of the officer as to criminal records of these parties, all of whom had some relationship to the events surrounding the crime. However, the error is entirely inconsequential and harmless. The fact that Brown, Wilkins and Williams had criminal records was of no importance, except as that fact might relate to the officer's failure to further investigate those persons. The detective testified at some length about his investigation of those persons. The judge made it clear that defense counsel was free to pursue full cross-examination of the detective, but further questions related to those persons were not asked. The sustaining of the objection to this inconsequential information was not prejudicial to the defense and was entirely harmless.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 13

Assignment of Error No. 13: "The trial court's ruling that the statement of the state's witness, Police Officer Billy Guice, that the decedent's brother said the Appellant was the one that killed the decedent was admissible only as a report to a police officer is prejudicial error."
The defendant asserts the trial court erred in ruling that the statement of police officer Billy Guice that the victim's brother stated defendant killed his brother, was admissible as a report to a police officer to explain the officer's next actions. Immediately following defense counsel's objection the trial court admonished the jury that the statement would only be admissible to explain the officer's next actions and was not admissible for the truth of the matter. There was no further objection raised by defense counsel and therefore defendant has waived his objection. Where defense counsel acquiesces when the court sustains the state's objection to *458 examination of a witness, that objection is waived. State v. Huizar, 414 So.2d 741 (La.1982). Further, the testimony was admissible for the purpose of explaining the officer's actions and with the the admonishment to the jury, was not objectionable. State v. Turner, 392 So.2d 436 (La.1980). This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 17

Assignment of Error No. 17: "The trial court's denial of appellant's objection that the statement of decedent's brother that decedent had told him that appellant had threatened his life was hearsay and should not be allowed as evidence to the jury is prejudicial error."
Kenny Harris, the decedent's brother, testified as a state witness that he told Willie Stamps, another witness, that "they done killed my brother." The following exchange then occurred:
Moses Williams: Why did you say that?
Kenny Harris: Because that night before it happened, I guess, me and my brother had a conversation about this girl, Geraldine Phillips, and he stated this guy Morris Harrison, had threatened his life.
Raymond Cannon: Your Honor.
Moses Williams: Well.
Judge Ragland: All right. Move over this way a little bit, and let the Jury go out of the room. State your objection, Mr. Cannon.
Raymond Cannon: My objection is that this is hearsay.
The defendant objected to this testimony as hearsay. The state argued that the evidence was not being offered to prove the truth of the assertion but rather to explain Kenny Harris' actions. The court overruled the objection and admonished the jury that the hearsay statement was admissible to explain the witnesses actions and what was reported to him and not to prove the truth of what was said to him. The testimony was hearsay in that it had no purpose other than to prove the truth of the matter asserted and because it was not justified by any recognized exception to the hearsay rule. Therefore it was error for the trial court to admit this testimony. However, in light of the overwhelming evidence against the defendant and the court's admonishment to the jury this error was harmless beyond a reasonable doubt. State v. Gibson, 391 So.2d 421 (La.1980); State v. Bailey, 514 So.2d 741 (La.App. 2d Cir.1987). Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 19

Assignment of Error No. 19: "The trial court's disallowance of appellant's closing argument that Donnell Williams was a convicted felon was clear prejudicial error and when the other trial errors are considered, deprived appellant of a fair trial and the right to make out his defense."
During closing argument, the state objected to defense counsel's reference to Donnell Williams as a convicted felon. Argument of counsel on the objection was directed toward whether there was evidence introduced that Williams had a prior felony conviction. When no one could remember for sure, it was determined that defense counsel would make no further reference to the felony conviction and the state would make any argument to the contrary in its rebuttal argument. No ruling on the objection was made in front of the jury. The objection and argument was not made in reference to the accessory charge to which Williams pled guilty during the trial, which fact was fully disclosed to the jury. There is no showing of prejudice to the defendant arising out of any undue curtailment of his closing argument.
Further, the court's statement concerning its knowledge of Donnell Williams and his family, another issue raised in this assignment, was made outside the presence of the jury and thus could not have affected its decision. The context in which the trial court's statement was made indicates an offhand comment of no significance. This assignment of error lacks merit.

DECREE
As the defendant's assignments of error are either not meritorious or do not constitute *459 reversible error, the defendant's conviction and sentence are affirmed.
AFFIRMED.