908 So.2d 1220 (2005)
STATE of Louisiana, Appellee
v.
Freddie WADE, Appellant.
No. 39,797-KA.
Court of Appeal of Louisiana, Second Circuit.
August 9, 2005.
*1222 G. Paul Marx, Lafayette, for Appellant. Freddie Wade, Pro Se.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, William J. Edwards, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
WILLIAMS, J.
The defendant, Freddie Wade, was charged by grand jury indictment with aggravated oral sexual battery of M.W.,[1] a violation of LSA-R.S. 14:43.4;[2] armed robbery of M.W., a violation of LSA-R.S. 14:64; aggravated rape of B.C., a violation of LSA-R.S. 14:42;[3] and indecent behavior with a juvenile, L.C., a violation of LSA-R.S. 14:81. After a jury trial, the defendant was found guilty of the responsive verdict of attempted aggravated oral sexual battery, and guilty as charged of armed robbery, aggravated rape and indecent behavior with a juvenile. The trial court denied the defendant's motions for post-verdict judgment of acquittal and new trial. Subsequently, the defendant was adjudicated a third felony habitual offender. The defendant's armed robbery sentence was enhanced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. He was sentenced to serve ten years at hard labor without the benefit of parole, probation or suspension of sentence for the attempted aggravated oral sexual battery conviction and life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for the aggravated rape conviction. The defendant was also sentenced to serve three and one-half years at hard labor for the indecent behavior with a juvenile conviction. The trial court ordered all four sentences to run concurrently. The defendant appeals. For the following reasons, the defendant's convictions and sentences are affirmed.

FACTS
On May 27, 1999, at approximately 2:14 a.m., the 62-year-old female victim, M.W., was asleep in her Shreveport home when she was awakened by a crashing noise. A black man entered her bedroom and demanded money. He was armed with a knife that had a six-inch long blade. M.W. told the man that her money was in her purse on the dresser beside her bed. He took $22 from her billfold and told her to lie down on the bed or he would cut her with the knife. The man ripped off M.W.'s pajamas and forced her to participate in oral sex with him. He also put his mouth on her breast. The man, who had entered the home by breaking a kitchen window, left through the carport door. M.W.'s television and videocassette recorder were also taken during the crimes. A rape kit was performed on M.W. at the hospital, and DNA from the breast swab was later linked to the defendant.
On the evening of May 12, 2002, 14-year-old B.C. and her younger siblings went to a Mother's Day party at their aunt's house after church. Their aunt brought them back to their home in Shreveport at approximately midnight, so that their mother could stay at the party a *1223 little longer. In the early morning hours of the next day, B.C. was sleeping in the bed she shared with her 8-year-old sister, L.C., when a man woke her up by grabbing her legs. She later recognized the intruder as a neighbor named "Fred," and she made an in-court identification of the defendant as the intruder.
During the struggle that ensued, the defendant kept telling B.C. to "shut up." He grabbed her by her bra and ripped it in half, leaving it hanging open. The defendant put B.C. on the bed where L.C. was sleeping. He pulled down his pants, pulled her to the edge of the bed, and began licking her vagina and breasts. The defendant then "forced himself" on B.C. by forcing his penis into her vagina. L.C. woke up and was calling B.C.'s name and crying. The defendant stopped and stood in front of B.C., who was sitting on the edge of the bed. The defendant rubbed L.C.'s face, and he told her to stop crying. L.C. testified that she woke up when someone grabbed her leg, and she heard "screaming and stuff." She saw a man close to B.C. and B.C.'s bra hanging open. B.C. and L.C. saw the defendant's face by the light from the bathroom. L.C. also made an in-court identification of the defendant as the neighbor she knew as "Fred," and as the intruder on the night of the crimes.
It was later determined that the defendant had entered the home through a broken bedroom window that was covered by a piece of cardboard. Fingerprints lifted from the piece of cardboard were matched to those of the defendant. A rape kit was performed on B.C. at the hospital, and DNA from the breast swab was later linked to the defendant. B.C.'s physical examination revealed abrasions to the genitalia.
The defendant was subsequently charged by grand jury indictment with four crimes: armed robbery and aggravated oral sexual battery of M.W. on May 27, 1999 (counts one and two); and aggravated rape of B.C. and indecent behavior with a juvenile, L.C., both on May 13, 2002 (counts three and four). The trial court denied the defendant's motion to quash/sever the charges. After a jury trial, the defendant was found guilty of the responsive verdict of attempted aggravated oral sexual battery, and guilty as charged of armed robbery, aggravated rape and indecent behavior with a juvenile.
The defendant's motions for post-verdict judgment of acquittal and new trial were denied by the trial court. The state filed a third felony habitual offender bill of information with regard to the armed robbery conviction, and the defendant was adjudicated a third felony habitual offender. On count one, the defendant was sentenced to serve ten years at hard labor without the benefit of parole, probation or suspension of sentence for the attempted aggravated oral sexual battery conviction. On count two, the defendant's armed robbery sentence was enhanced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. On count three, the defendant was sentenced to serve life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for the aggravated rape conviction. On count four, the defendant was sentenced to serve three and one-half years at hard labor for the indecent behavior with a juvenile conviction. The trial court ordered the four sentences to run concurrently. The defendant appeals.

DISCUSSION

Sufficiency of the Evidence:
By this assignment of error, the defendant contends the evidence presented at *1224 trial was insufficient to support the jury's verdict of indecent behavior with a juvenile, and thus, the trial court erred by not granting his motions for post-verdict judgment of acquittal and new trial. The defendant argues that the testimony of B.C. and L.C. does not support a finding of guilt with regard to the charge of indecent behavior with a juvenile. He argues that the evidence conclusively established that L.C. was sleeping in the room and was unaware of anything, and that the perpetrator stopped raping B.C. and left the room when L.C. woke up. The defendant notes that L.C. testified that she saw a man close to her sister, and L.C. did not testify with regard to anything sexual or any perception consistent with the definition of a "lewd or lascivious act."
The state contends the evidence, viewed in the light most favorable to the prosecution, was sufficient to find the defendant guilty as charged of indecent behavior with a juvenile. It argues that given the factual circumstances of the instant case, the jury could conclude that L.C. awoke while the defendant was in a position to be observed and/or perceived to be engaged in indecent behavior.
The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App. 2d Cir.8/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.
LSA-C.Cr.P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
LSA-C.Cr.P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article, the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App. 2d Cir.6/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2899 (La.2/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993).
When issues are raised on appeal both with regard to the sufficiency of the evidence and with regard to one or more trial errors, the reviewing court must first determine the sufficiency of the evidence. The reason for reviewing the sufficiency of the evidence first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson v. Virginia, supra, standard is applicable in cases involving both direct and circumstantial evidence. An appellate *1225 court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. art. V, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, and writ denied, XXXX-XXXX (La.6/26/98), 719 So.2d 1048.
The Louisiana Supreme Court has held that the testimony of the victim alone in a sexual assault case is sufficient to convince a reasonable fact-finder beyond a reasonable doubt of a defendant's guilt. State v. Rives, 407 So.2d 1195 (La.1981); State v. Smith, 35,699 (La.App. 2d Cir.4/5/02), 815 So.2d 412, writ denied, XXXX-XXXX (La.4/4/03), 840 So.2d 1200; State v. Elzie, 37,920 (La.App. 2d Cir.1/28/04), 865 So.2d 248, writ denied, 2004-2289 (La.2/4/05), 893 So.2d 83. Furthermore, such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Elzie, supra.
LSA-R.S. 14:81(A) provides that in order to convict a defendant of indecent behavior with a juvenile, the state must prove that: (1) the defendant committed a lewd or lascivious act upon the person or in the presence of the victim, a child under the age of 17; (2) the defendant was over the age of 17 and more than 2 years older than the victim; and (3) the defendant had the intention of arousing or gratifying the sexual desires of either person. LSA-R.S. 14:81; State v. Ellis, 38,740 (La.App. 2d Cir.8/18/04), 880 So.2d 214; State v. Jones, 34,863 (La.App. 2d Cir.8/22/01), 794 So.2d 107, writ denied, 2001-2648 (La.8/30/02), 823 So.2d 938.
LSA-R.S. 14:81 encompasses not only the physical touching of the victim in an indecent manner, but also "indecent sexual displays in the presence of children under the age of seventeen." In the absence of a physical touching upon the person of the child, for a violation to occur, LSA-R.S. 14:81(A) requires the knowing commission of a sexual act such that the child sees or senses that a sexual act is taking place, even if the child is not able to articulate or even comprehend what the offender is doing. State v. Interiano, XXXX-XXXX (La.2/13/04), 868 So.2d 9.
Specific intent to commit the offense of indecent behavior with a juvenile need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant. State v. Blanchard, *1226 XXXX-XXXX (La.4/20/01), 786 So.2d 701; State v. Ellis, supra; State v. Jones, supra; State v. Battaglia, 03-692 (La.App. 5th Cir.11/25/03), 861 So.2d 704, writ denied, XXXX-XXXX (La.4/29/05), 901 So.2d 1058.
The defendant only argues that one element of the crime was not proventhat L.C. was asleep during the rape of B.C., and therefore, lewd or lascivious acts were not committed "upon the person or in the presence of" L.C. This argument, however, is unsupported by the evidence and applicable law. At trial, the state presented the testimonial evidence of B.C. and L.C. to prove that the twenty-five-year-old defendant knowingly committed a sexual act in the presence of eight-year-old L.C. The victim, B.C., testified that the defendant vaginally and orally raped her within such close proximity to L.C. that, when L.C. awoke, the defendant was able to touch her face in an attempt to quiet her. L.C. testified that when she woke up and heard "screaming and stuff," the defendant was very close to B.C., and B.C.'s bra was "hanging."
Although there was no physical touching of L.C. in an indecent manner, we find that the defendant's conduct certainly qualified as an "indecent sexual display in the presence of a child under the age of seventeen." The evidence supports the finding that L.C. sensed that a sexual act was taking place, even though she was unable to articulate or comprehend what the defendant was doing to her sister B.C. See State v. Interiano, supra.
Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the essential elements of the crime of indecent behavior with a juvenile were established beyond a reasonable doubt. Consequently, we find that the trial court did not err in denying the defendant's motions for post-verdict judgment of acquittal and new trial. This assignment of error lacks merit.

Severance of Offenses:
By this assignment of error, the defendant contends the trial court erred by refusing to sever the 1999 offenses from the 2002 offenses. Citing LSA-C.Cr.P. arts. 493 and 495.1, the defendant argues that the joinder of these offenses for trial, which was statutorily permitted, caused such prejudice and unfairness that they should have been severed. The defendant notes that the offenses occurred more than three years apart. He points out the difference in the ages of the victims and that the victim in the 1999 offenses saw a knife and was awakened by a crashing window, whereas the victims of the 2002 offenses recognized the perpetrator as a neighbor. The defendant argues that the trial of these combined offenses was prejudicial because of the inference of guilt, and that the offenses would not have been admissible as relevant "other crimes" had there been separate trials. The defendant notes that the facts were similar to the point that they could easily be confused, and he contends the only reason for the joint trial was to give the state an advantage. The defendant concludes that he should have been tried separately for these offenses.
The state argues that LSA-C.Cr.P. art. 493 allows the joinder of the offenses because of the similarities shared by the two cases. It argues that the defendant has failed to demonstrate that the trial court abused its discretion in denying the motion to sever. The state further argues that there was a sufficient showing of a common scheme to justify the joinder of the offenses.
LSA-C.Cr.P. art. 493 provides:

*1227 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
The trial court has discretion to order separate trials when two or more offenses have been improperly joined to the detriment of the defendant or the state. See LSA-C.Cr.P. art. 495.1. However, a motion for severance is addressed to the sound discretion of the trial court, and the ruling should not be disturbed on appeal absent a showing of abuse of discretion. State v. Jeffers, 623 So.2d 882 (La.App. 2d Cir.1993). A defendant bears a heavy burden of proof when alleging prejudicial joinder of offenses as grounds for a motion to sever. Factual, rather than conclusory, allegations are required. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012; State v. George, 26,867 (La.App. 2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855.
In State v. Smith, 600 So.2d 745 (La.App. 2d Cir.1992), this court stated:
A severance is not mandated simply because the respective offenses would not be admissible at separate trials if the defendant is not prejudiced by the joinder.
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. A severance need not be granted if prejudice may effectively be avoided by other safeguards.
(Citations omitted.)
At the hearing on the motion to sever, Detective Paula Vasquez of the Shreveport Police Department summarized the facts and circumstances surrounding the investigation of both sets of offenses. She related that the May 27, 1999 offenses involved a 62-year-old female victim, M.W., who called at approximately 2:23 a.m. to report that a black male had entered her home by breaking a kitchen window. He came into her bedroom, woke her up and demanded money. M.W. showed him where her purse was located, which contained only $22. The man then demanded that she perform oral sex on him, and he performed oral sex on her, all while he was armed with a six-inch knife. The man asked if he could be her "old man," and he stated that if he could get "inside" her, he would. He repeatedly told the victim that he would kill her if she called the police. DNA swabs taken from M.W.'s breasts were later linked to the defendant, who lived approximately one block southeast of the victim's home at the time of the crimes.
Detective Vasquez related that the May 13, 2002 offenses occurred when a man entered 14-year-old B.C.'s bedroom at approximately 12:30 a.m. He had gained access into the residence through a broken window. After a struggle, the man, who B.C. recognized as a neighbor named "Fred," overpowered and raped B.C. on the bed that she shared with L.C., her 8-year-old sister. "Fred" also put his mouth *1228 on B.C.'s breasts and performed oral sex on her. He repeatedly told B.C. that he loved her and that he had been watching her. He told her not to tell anyone. DNA obtained from B.C.'s breast was matched to the defendant.
Detective Vasquez specifically noted the following:
1. Both offenses involved entry into the residence through a window;
2. Both offenses involved some type of oral sexual battery upon the victims;
3. Both offenses occurred in the same neighborhood;
4. Both offenses involved the use of force;
5. Each victim was admonished not to tell anyone;
6. The defendant lived in close proximity to each victim; and
7. Each offense occurred in the early morning hours.
After hearing the arguments, the trial court denied the motion to sever. The defense's objection was noted for the record.
A review of the record reveals that the trial court did not abuse its discretion in denying the defendant's motion to sever the trial of the offenses. The state presented the testimony of Detective Vasquez with regard to the numerous similarities shared by the two criminal incidents, and the defendant was tried by a twelve-member jury on all four counts. Thus, we conclude that the joinder was statutorily permitted under LSA-C.Cr.P. art. 493, because the two sets of offenses were of the same or similar character and all four counts were triable by the same mode of trial.
We further conclude that none of the defendant's arguments meet the heavy burden of proof required when alleging prejudicial joinder of offenses as grounds for a motion to sever. We find no indication that the jury was confused by the various counts or was unable to segregate the various charges and evidence. The evidence against the defendant was not complex and was presented in an orderly fashion, allowing the jury to segregate the charges and the evidence. The majority of the witnesses testified to either the 1999 crimes or the 2002 crimes, but not both. The trial court specifically instructed the jury as follows:
Evidence of one offense charged is not to be considered as evidence of any other offense. The accused is not to be found guilty of one offense merely because he may have committed another offense.
The trial court further instructed the jury that it was to consider each of the four counts individually and was to render a separate verdict as to each count. The jury was given and returned separate verdict forms as to each count. Furthermore, the defendant has neither alleged nor argued that the failure to sever the offenses confounded the presentation of his various defenses. See State v. Smith, supra. Under these circumstances, we do not find that the trial court abused its discretion in denying the defendant's motion to sever. This assignment of error lacks merit.

Hearsay Evidence:
By this assignment of error, the defendant contends the trial court erred in allowing the state to present inadmissible hearsay testimony from a detective. Specifically, the defendant argues that the detective should not have been allowed to testify with regard to Shawn Hagan's statements that the defendant admitted his participation in the 1999 crimes against M.W. In his original brief, the defendant argues that because Hagan never testified in court, the testimony of the detective *1229 with regard to Hagan's statements was hearsay, and the admission of the testimony violated the defendant's rights under the Sixth Amendment confrontation clause. The defendant cites cases with regard to the inadmissibility and unreliability of hearsay statements. He contends the testimony of the detective was unnecessary to explain the scenario with regard to the detective's actions. In his reply brief, the defendant argues that the constitutional error cannot be excused by the state's assertion that the evidence of guilt is compelling. He further argues that the admonition to the jury did not cure the error, and the introduction of the detective's testimony was highly prejudicial because the information "filled in some of the blanks" with regard to conduct during the first set of offenses. The defendant concludes that the detective's testimony was "prejudicial double hearsay."[4]
The state notes that the court admonished the jury not to accept the testimony as truthful, but only to explain the actions of the detective. Citing State v. Harrison, 560 So.2d 450 (La.App. 2d Cir.1990), the state argues that because of the overwhelming and compelling evidence of the defendant's guilt, any error committed by the trial court in allowing the testimony was harmless and does not justify the reversal of the convictions.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801(A)(1) and (C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Williams, 98-1006 (La.App. 5th Cir.3/30/99), 735 So.2d 62, writ denied, XXXX-XXXX (La.9/24/99), 747 So.2d 1118; State v. Dyer, 00-1866 (La.App. 5th Cir.4/24/01), 794 So.2d 1, writ denied, XXXX-XXXX (La.6/27/03), 847 So.2d 1256.
Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454 (La.1984).
A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Watson, 449 So.2d 1321 (La.1984); State v. Williams, supra; State v. Dyer, supra.
Where an investigating officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, if they are not offered for the truth of the matter asserted, but merely to explain the officer's actions. State v. Watson, supra; State v. Dyer, supra; State v. McNair, 597 So.2d 1096 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1113 (La.1992). In other words, where the officer does not testify with regard to the substance of what another person told him, but with regard to what he did in response to that information, the testimony is not considered hearsay. State v. Maise, 99-734 (La.App. 5th Cir.3/22/00), 759 So.2d 884, writ granted, XXXX-XXXX (La.9/14/01), 795 So.2d 1219, and judgment affirmed, XXXX-XXXX *1230 (La.1/15/02), 805 So.2d 1141; State v. Smith, 97-1075 (La.App. 5th Cir.4/15/98), 710 So.2d 1187.
However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. State v. Broadway, 1996-2659 (La.10/19/99), 753 So.2d 801. Nevertheless, the erroneous admission of hearsay evidence does not require a reversal of the defendant's conviction if the error is harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. State v. Wille, 559 So.2d 1321 (La.1990).
During opening statements, the state related that Hagan, who was incarcerated in Basile, Louisiana, would appear and testify that the defendant admitted to him his participation in the 1999 crimes against M.W. During the trial testimony of Detective Clarence Van Wray, Jr. of the Shreveport Police Department, the state questioned the detective on direct examination with regard to how the defendant became a suspect in the first set of crimes. Detective Van Wray testified that his department received some information from Hagan. When Detective Van Wray was asked if Hagan had given the names of any possible suspects, the defense made an objection. Outside the presence of the jury, the defense objected to the hearsay nature of the answer sought. The state argued that it was not offering the information for the truth of the matter spoken, but to explain why the detective took certain actions. The state suggested that an admonition given in advance to the jury would properly handle the situation. The court eventually decided that an admonition would be given. Thereafter, the jury was brought in, and the court gave the following admonition:
If a witness testifies about any information he received, which information is based upon statements made outside of court, the jury may not consider this information for the truth of the matter spoken, but only to explain why the witness acted as he did after receiving this information.
The state continued questioning Detective Van Wray with regard to the manner in which he was put in contact with Hagan. The detective testified that Hagan was offering information in exchange for a relocation to a facility closer to his family in Shreveport. Hagan told Detective Van Wray information which had similarities to M.W.'s case. The state asked the detective whether Hagan gave names of suspects in M.W.'s case, to which Detective Van Wray responded affirmatively. The state then asked Detective Van Wray if the defendant was one of the suspects named by Hagan. Detective Van Wray responded, "Yes." The defense made a contemporaneous objection, which was noted by the trial court, and the state was allowed to continue its questioning of Detective Van Wray.
The state's questioning continued, during which Detective Van Wray explained the circumstances leading to the execution of a search warrant for the defendant's DNA, which was determined to be consistent with the DNA sample taken from the swab of M.W.'s breast after the 1999 crimes. The state subsequently introduced evidence that DNA samples were also taken from Hagan and another suspect, Johannas Washington. Hagan's DNA sample and Washington's DNA sample were determined to be inconsistent with the DNA from the 1999 crimes against M.W. Despite diligent attempts by *1231 the state to secure Hagan's appearance at the defendant's trial, Hagan did not appear.
Although the state argued at trial that the testimony of the detective was not offered for the truth of the matter asserted, and although the court admonished the jury not to consider the testimony of the detective for the truth of the matter asserted, the detective still testified that Hagan told him that the defendant was a suspect. Because the detective testified with regard to the substance of Hagan's statements and did not limit his testimony to his actions in response to the information, we find that his testimony with regard to the identification of the defendant as a suspect was hearsay. We further find that the testimony was not justified by any recognized exception to the hearsay rule, and thus, the trial court erred in admitting the testimony. See State v. Maise, supra; State v. Harrison, supra.
However, even though the admission of Hagan's statements described above was inadmissible hearsay, we find that the error is harmless in this case and a reversal is not warranted. The testimonial and scientific evidence of the defendant's guilt was overwhelming, and the court gave an admonishment to the jury. See State v. Harrison, supra. Therefore, after a thorough review of all of the evidence presented at trial, we find beyond a reasonable doubt that the hearsay evidence did not contribute to the defendant's convictions. State v. Wille, supra. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The initials of the victims are used because of victim confidentiality requirements applicable to this case under LSA-R.S. 46:1844(W).
[2] The date of this crime was May 27, 1999, before LSA-R.S. 14:43.4 was repealed by Acts 2001, No. 301, § 2.
[3] The date of this crime was May 13, 2002, after LSA-R.S. 14:42 was amended to include oral sexual intercourse by Acts 2001, No. 301, § 1.
[4] The defendant's conclusion that the detective's testimony was double hearsay is erroneous. Double hearsay is hearsay included within hearsay. LSA-C.E. art. 805. Here, the detective related statements made by Hagan, the content of which was that the defendant made an incriminating statement. The defendant's statement to Hagan is a personal admission, and thus, is not hearsay. See LSA-C.E. art. 801(D)(2)(a); State v. Huff, 27,212 (La.App. 2d Cir.8/23/95), 660 So.2d 529, writ denied, 96-0212 (La.5/1/97), 693 So.2d 754.