734 So.2d 140 (1999)
STATE of Louisiana
v.
Mark V. THOMAS.
No. 98-KA-1298.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 1999.
Katherine M. Franks, Louisiana Appellate Project, Baton Rouge, Louisiana, Attorney for Defendant*Appellant.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Terry Boudreaux, Appellate Counsel, Walter Amstutz, Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
*141 Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
DALEY, Judge.
Defendant, Mark V. Thomas, appeals his conviction of aggravated battery, a violation of LSA-R.S. 14:34. Following conviction, he was sentenced as a multiple offender. On appeal, Thomas argues that the state's evidence was insufficient because the state failed to prove that the defendant did not act in self defense. He also requests an errors patent review. We affirm, noting two errors patent, and remand for resentencing.
Defendant was charged with the attempted second degree murder of John Blake, a violation of LSA-R.S. 14:27:30.1.[1] Thomas was arraigned on December 4, 1997, and pled not guilty. Trial began on February 3, 1998, and concluded on February 4, 1998, when a unanimous jury returned a verdict of guilty of the responsive verdict of aggravated battery. On February 18, 1998, the trial court sentenced the defendant to 10 years at hard labor.
On July 9, 1998, the defendant stipulated to being a second felony offender, and, after advising the defendant of his rights, the trial court sentenced him, under the provisions of LSA-R.S. 15:529.1, to 10 years at hard labor without benefit of probation or suspension of sentence.
Defendant's Motion for Appeal was premature when it was filed on February 26, 1998, after conviction and sentence on the offense, but before he was adjudicated to be a multiple offender. However, that procedural defect was cured by the subsequent resentencing.[2]

FACTS
John Blake, the victim, testified that on January 19, 1997 he went with his sister, Brandie, and her boyfriend, Greg Hansen, to Mike's Place, a Metairie bar. Mr. Blake said that after going to Mike's Place, they went to Taco Bell, and drove home to the Westbank. Mr. Blake testified that Brandie was driving the car on Barataria Avenue, when he saw a car drive close by their side and cut them off, forcing Brandie onto the neutral ground. Mr. Blake said that the car that cut them off turned onto Pritchard Drive while Brandie continued down the neutral ground on Pritchard, stopping in front of their home. Mr. Blake stated that when they exited the car, the driver of the car that cut them off (the defendant, Mark Thomas) had exited his car at the stop sign on Mary and Pritchard streets and was yelling at them. Mr. Blake approached the defendant to talk to him, explaining to the court that the defendant seemed very upset and he was going to try to see what the problem was and if he could calm the situation. He said that he could only see the top half of Mark Thomas's body, as the lower half was obscured by his car door, and that he did not see anything in the defendant's hand. Next, Blake heard the front door of his house close. Mr. Blake testified that he turned around to see who was coming out of his door, and he remembered nothing until waking up in the hospital. Mr. Blake testified that he was not intoxicated at the time of the altercation, and that he did not threaten the defendant or do anything to cause the defendant to hit him. He testified that he did not know the defendant. On cross examination, Blake said that he did not notice the defendant driving behind them until they were on Barataria Boulevard and almost home.
Brandie Blake corroborated her brother's testimony. Ms. Blake testified when they were driving on Barataria, she noticed a car following them closely with its high beams on. She said she called the *142 men's attention to it, but only Hansen responded and he said for her not to worry about it. She said that when she stopped her car in front of her house, she saw the defendant getting out of his car. She watched her brother and Hansen exit the car and walk towards the defendant. Ms. Blake stated that there was no "trash talk" or threats between her brother, Hansen, and the defendant, and that she did not hear talking at all. Because she had a bad feeling, she went into the house to grab the phone to call police, and when she walked outside she saw the defendant hit her brother in the head with a "club" steering wheel locking mechanism. She saw Blake was lying in a pool of blood and had thrown up, and was breathing with difficulty. Ms. Blake called 911, and waited with her brother until the ambulance came.
Gregory Hansen testified that while they were returning from Metairie, a car pulled up behind them with its bright lights on, passed them, and cut them off, forcing them onto the neutral ground. Mr. Hansen told the jury that they exited their car and walked over to talk to the defendant, asking him why he cut them off. Mr. Hansen recalled the defendant using an obscenity and then striking John Blake in the head with the "club" device. The defendant then threatened Hansen, asking him if he "wanted some" too. Thomas left in his car. Mr. Hansen jumped in Brandie's car to follow the defendant into the neighborhood. He located the defendant's car about 6 blocks away, later leading police officers back to the car. Mr. Hansen testified that neither he nor the victim were intoxicated that night, both having only consumed one or two beers while at the bar. On cross examination, he stated that he could see that the defendant was holding the club, and he thought that Blake had seen it, too. Hansen testified that neither he nor Blake was armed.
Deputy Paul Kohles of the Jefferson Parish Sheriff's Office testified that on January 19, 1997, he responded to a scene at Mary and Pritchard Streets, and found the victim, John Blake, in the street unresponsive. After acquiring medical help for the victim, Deputy Kohles followed Greg Hansen to Tulip Court where the defendant's vehicle was located. Deputy Kohles testified that he felt the car's hood, noting that it was still warm, and shined his flashlight in through the car's windows. Looking in the windows, Deputy Kohles saw a "club" and a pay stub bearing the name of the defendant and an address of 3209 Tulip Court.
Deputy Kohles went to the 3209 Tulip address, talked to the defendant's mother, and the defendant. Deputy Kohles placed the defendant in investigative custody and took him back to the crime scene, where he was positively identified by Brandie Blake and Greg Hansen. Subsequent to the identification, Deputy Kohles read the defendant his rights, and placed him under arrest. Deputy Kohles told the jury that the defendant was not hurt or injured at the time of his arrest.
David Gorbach, the paramedic who provided medical attention at the scene, told the jury that the defendant had severe head injuries and experienced trouble breathing. Dr. Frank Culicchia, an expert in neurosurgery, told the jury that, upon the defendant's admission to West Jefferson hospital at 3:15 a.m., the defendant was critically ill with a severe head injury and bleeding around the brain. He told the jury that he performed surgery on the defendant and that the defendant was in the hospital for one week. According to Dr. Culicchia, the victim has sustained permanent brain damage.
As part of its case, the defense called the defendant's mother, Evelyn Henry. She told the jury that at approximately 3:30 a.m. on January 19, 1997, a police officer came to her door looking for her son. She testified that the defendant told the police that evening that he was driving down Barataria with his high beams on. He passed the car in front of him, to avoid *143 shining his high beam lights in their window. Ms. Henry told the police that her son further related that the car he passed drove on the neutral ground and cut him off at the stop sign. She said that he told the police that two white males got out of their car and were tying to pull him out of his car when the altercation took place.
The defense also presented the testimony of Christopher Foster, an acquaintance of the victim. Mr. Foster testified that he had talked about the incident with the victim, who told him that "he got jumped by two black people." Mr. Foster said that later, while talking about the incident to his friend Chris Orgeron, Mr. Orgeron told him that what really happened was that John Blake and a friend hit the defendant on the back of the head, and then John got hit on the head with the "club." Based upon these conversations, Mr. Foster talked to the defense attorney, but never talked to the police.
On rebuttal, the state offered into evidence the police report, signed by the defendant, that indicated that the defendant was not hurt or injured at the time of the arrest.
Based on the foregoing, the jury found the defendant guilty of aggravated battery.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant argues that the evidence at trial was insufficient to convict because the state failed to "negate beyond a reasonable doubt that it was necessary and reasonable" for the defendant to use force to defend himself.
The use of force or violence for self-defense is governed by LSA-R.S. 14:19, which states:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide.
In State v. Freeman, 427 So.2d 1161, 1163 (La.1983), the Louisiana Supreme Court stated that "in the non-homicide situation, the defense of self-defense requires a dual inquiry; an objective inquiry into whether the force used was reasonable under the circumstances; a subjective inquiry into whether the force was apparently necessary." Freeman at 1163.
In the instant case, the state's eye witness testimony (the victim and two witnesses) describes the defendant's attack upon the victim as unprovoked. The only evidence offered to show that the defendant acted in self-defense was the testimony of Christopher Foster, who testified that his friend, Chris Orgeron, had talked to the defendant, who said that Greg Hansen and John Blake initiated the attack.
The record establishes that the state has proven beyond a reasonable doubt that the force or violence used by the defendant was not reasonable, and also was not apparently necessary. The prosecution presented the direct evidence of the Mr. Blake, Ms. Blake, and Mr. Hansen. They testified that they did not initiate the encounter, and that they were not armed with any weapons. Their testimony regarding the physical part of the altercation is corroborated by the police report, which notes that Thomas was not hurt and did not advise the officer that he was hurt. Defendant presented no direct evidence that he acted in self defense when he struck Blake. The state presented direct evidence that the defendant was not acting in self defense. The jury apparently found the prosecution witnesses credible and rejected the defendant's claim of self defense.
On appeal, the defendant argues that the applicable legal standard to be applied is "whether a rational trier of fact, viewing the evidence in a light favorable to the state, could find that all reasonable hypotheses *144 of innocence were excluded." However, that is the burden of proof used in a case proven with circumstantial evidence. Here, because the state presented the direct testimony of witnesses to prove its case, this standard does not apply, and this argument is without merit.

ERRORS PATENT
As requested by this assignment, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920 and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The trial court did not inform the defendant of the prescriptive period for applying for post conviction relief, as per LSA-C.Cr.P. art. 930.8. We remand and order the trial court to send written notice of the prescriptive period to defendant within ten days of the rendering of this Court's opinion, and file written proof in the record that defendant received such notice. See State v. Kershaw, 94-141 (La. App. 5 Cir. 9/14/94), 643 So.2d 1289.
The record also reveals that the trial court erred by failing to vacate the defendant's original ten year sentence before imposing a ten year sentence upon the defendant as a second felony offender. The trial court is required to vacate the defendant's previous sentence prior to imposing an enhanced sentence on the defendant as a multiple offender. State v. White, 354 So.2d 1360 (La.1978). Where the original sentence on the underlying offense has not been vacated at the time of defendant's sentencing as an habitual offender, the original sentence remains in effect and the subsequent sentence as a multiple offender is null and void. State v. Carter, 96-358, pp. 13-14 (La.App. 5 Cir. 11/26/96), 685 So.2d 346, 353-354.
The defendant was originally sentenced to serve ten years at hard labor on February 18, 1998. The defendant was sentenced to "10 years flat", the judge stating that the first 85% of the sentence was to be served without benefits. Upon sentencing the defendant as a multiple offender, the trial judge sentenced the defendant to ten years at hard labor, to be served without benefit of probation or suspension of sentence, but failed to vacate the defendant's original sentence. Accordingly, the multiple offender sentence is null and void, and the only sentence currently in effect is the defendant's original ten year sentence. See State v. Carter, supra. Therefore, we remand for defendant to be resentenced as a multiple offender.
AFFIRMED; REMANDED FOR RESENTENCING.
NOTES
[1] The State had originally filed a bill of information charging the defendant with aggravated battery.
[2] State v. Balser, 96-443, p. 7 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354; State v. Page, 96-227, p. 4 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106 n. 2, writ denied, 96-2543 (La.9/19/97), 701 So.2d 153.