759 So.2d 980 (2000)
STATE of Louisiana
v.
Anthony O. STOKES.
No. 99-KA-1287.
Court of Appeal of Louisiana, Fifth Circuit.
April 13, 2000.
*982 Margaret S. Sollars, Thibodaux, Louisiana, Attorney for Appellant, Anthony O. Stokes.
Paul D. Connick, Jr., District Attorney, Alison WallisCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Frank A. BrindisiTrial Counsel Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CHEHARDY, Judge.

STATEMENT OF THE CASE
On May 27, 1997, the Jefferson Parish District Attorney filed a bill of information charging defendant, Anthony Stokes, with possession with the intent to distribute cocaine, a violation of La. R.S. 40:967(A). Defendant pled not guilty at his arraignment. After a trial by jury on August 15, 1997, defendant was found guilty as charged. On August 21, 1997, the trial judge sentenced defendant to serve seven years at hard labor.
On August 20, 1997, the state filed a multiple offender bill of information, alleging defendant to be a fourth felony offender. Defendant denied the allegations in the bill of information, and a multiple offender hearing was held on October 6, 1997. At the conclusion of the hearing, the trial judge found defendant to be a multiple offender and imposed a sentence of life imprisonment. This appeal ensued.

FACTS
The state presented several witnesses at trial, whose testimony established the following facts. At approximately 1:00 a.m. on May 16, 1997, Deputies Manix and Yorsch, members of the Street Crimes Unit of the Jefferson Parish Sheriffs Office, were on patrol in an unmarked police car in the area of Jung Boulevard and Claremont Street in Marrero. As Street Crimes officers, the deputies frequently patrolled this area because it is a high-crime area and known for narcotics trafficking.
Both officers testified at trial that they observed defendant walking down the sidewalk of Jung Boulevard, and that when defendant noticed their unmarked police unit, he began acting nervous and picked up his pace. Considering defendant's behavior upon noticing them, as well as the time of night and being in a high-crime area, the officers decided to investigate further. As they drove closer to defendant, the officers observed another man walking towards defendant from the opposite direction. Both officers testified that before the other man and defendant passed each other, defendant discarded a white object. Defendant then "slapped hands" with the other man as they passed each other. Both officers testified that the other man looked surprised that defendant wanted to "give him five." Both officers further testified that the other man did not discard anything.
Deputy Manix stopped the car and approached the two men to conduct a field interview. Deputy Yorsch testified that he retrieved the object that defendant had discarded and discovered that it was a white napkin concealing a clear cellophane bag that contained approximately fifty rock-like substances, which appeared to be crack cocaine. Defendant was then placed under arrest.
At trial, Edgar Dunne, the state's expert forensic scientist, testified that he tested the material and found it to contain cocaine.
Sergeant Bruce Harrison, who was accepted as an expert in the use, packaging, handling and value of narcotics, specifically cocaine, testified that the manner in which the individual pieces of crack were broken up was indicative of preparation for *983 distribution. According to Sergeant Harrison, the fifty rocks in the plastic bag were inconsistent with personal use. Sergeant Harrison estimated that the individual pieces of crack cocaine in the bag would sell for $10.00 a piece, which would amount to approximately $500.00. He testified that crack users normally purchase between one and five rocks at a time for personal consumption. He further testified that a user would not purchase that many rocks at once for personal consumption because a user could get substantially more cocaine for the same amount of money if he or she purchased cocaine in bulk or slab form. Another reason users do not purchase large amounts of crack for personal use, according to Sergeant Harrison, is because users are familiar with the criminal consequences of possessing larger quantities of cocaine.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant contends that he was denied effective assistance of counsel because his trial counsel failed to object to Sergeant Harrison's qualifications as an expert.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and to create an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993). As the trial transcript discloses sufficient evidence, this assignment will be addressed herein.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. To show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
According to defendant, trial counsel's failure to object to Sergeant Harrison's qualifications resulted in the admission of evidence that failed to meet the standard of reliability required by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The general rule for admissibility of expert testimony is set out in La. C.E. art. 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In Daubert, the United States Supreme Court held that Federal Rule of Evidence 702 imposes an obligation upon a trial judge to ensure that scientific testimony is relevant and reliable. Daubert listed several factors that a court could consider in determining the admissibility of an expert's testimony. The Louisiana Supreme Court, in State v. Foret, 628 So.2d 1116 (La.1993), recognized that courts can rely on the standards enunciated in Daubert when evaluating the admissibility of scientific expert testimony pursuant to Article 702.
Recently, in Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court recognized *984 that a trial court may apply Daubert's factors when determining the admissibility of all expert testimony, not just scientific testimony. However, the Court also recognized a trial court's broad discretion in determining whether Daubert's specific factors are reasonable measures of reliability in a particular case. The trial court's decision to admit or exclude expert testimony is subject to an abuse of discretion standard. Kumho, 119 S.Ct. at 1176.
The Louisiana Supreme Court has not ruled on whether Kumho will be applied when interpreting La. C.E. art. 702. Further, Kumho was decided after defendant's trial in the instant case. Nevertheless, we find that Kumho has no effect on the instant case because, ultimately, both Louisiana and Federal law recognize that the decision to reject or accept a witness as an expert is within the great discretion of the trial court, whose rulings will not be disturbed absent an abuse of that discretion. Kumho, supra; State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997); State v. Tran, 97-640 (La.App. 5 Cir.3/11/98), 709 So.2d 311, 314.
In State v. Soler, 93-1042 (La.App. 5 Cir.4/26/94), 636 So.2d 1069, 1080, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055, this Court explained the function of an expert witness:
The purpose of an expert witness, particularly in criminal cases, is to provide the jurors with a basis of knowledge and background information on a subject. The jury's role is that of ultimate fact finder: the jurors relate background knowledge from the expert to the facts established by evidence at trial and make a determination of the defendant's guilt.
To establish defendant's guilt, the state was required to prove beyond a reasonable doubt that defendant knowingly and intentionally possessed the cocaine with the specific intent to distribute it. La. R.S. 40:967(A). One of the factors that may be used to prove the defendant's intent to distribute a controlled dangerous substance is expert or other testimony to establish that the amount of the drug found in the defendant's possession is inconsistent with personal use only. State v. Hearold, 603 So.2d 731 (La.1992); State v. White, 98-91 (La.App. 5 Cir.6/30/98), 715 So.2d 714, writ denied, 98-2043 (La.11/25/98), 729 So.2d 577. In order to meet this burden of proof, the state offered Sergeant Harrison as an expert in the use, packaging, handling and value of narcotics, specifically cocaine.
Before Sergeant Harrison was qualified as an expert, he testified regarding his qualifications, which included both experience and formal training. Sergeant Harrison testified that he had become familiar with the use, packaging, handling and value of controlled dangerous substances during his employment as a narcotics officer. Sergeant Harrison testified that he had been with the narcotics division of the Jefferson Parish Sheriffs Office for the past two years. Prior to that time, he had been employed with the New Orleans Police Department for twelve years. Of that time, he was involved in narcotics-related work for ten years.
Sergeant Harrison's training consisted of an associate degree in criminal justice from Delgado Community College, training at the police academy, and approximately two hundred and twenty-four hours of seminar training in different fields of narcotics. After reviewing the officer's qualifications, the state tendered the witness to the defendant and defense counsel stipulated that the officer was an expert in the fields offered.
Other than suggesting that Sergeant Harrison had no "scientific credentials," defendant does not specify what aspect of Sergeant Harrison's qualifications were lacking such that his expert testimony was unreliable. In sum, defendant has failed to show that his trial counsel was deficient in failing to object to Sergeant Harrison *985 being qualified as an expert. Defendant has also failed to show that he was prejudiced by his counsel's failure to object, and that the outcome of the trial would have been different.
Based on the foregoing discussion, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In defendant's second assignment of error, he contends that the state failed to prove that he was a multiple offender, arguing that the state did not introduce the transcripts of the former plea colloquies, that the introduced arrest registers are hearsay, and that the proceeding was improper because his underlying conviction is not final.
La. R.S. 15:529.1(D)(1)(b) provides, in pertinent part:
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(Emphasis ours).
A defendant must object or file a written response to the lack of Boykin[1] transcripts in order to preserve such a claim for review on appeal. State v. Windham, 630 So.2d 688 (La.1993); State v. Richmond, 98-1015 (La.App. 5 Cir.3/10/99), 734 So.2d 33.
Because defendant failed to file a written response as required, or orally raise the claim regarding the Boykin transcripts at the habitual offender hearing, he may not now raise this issue on appeal. La. R.S. 15:529.1(D)(1)(b); State v. Windham, supra.
Defendant also argues that the trial court erred by admitting the arrest registers purporting to contain his fingerprints into evidence because there was no proper showing that the documents fell within an exception to the hearsay rule. However, defense counsel made no hearsay objection during the proceedings. In addressing the same claim in State v. Bell, 97-1134 (La. App. 5 Cir.2/25/98), 709 So.2d 921, 926, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477, this Court held that the defendant had waived his complaint that the arrest registers were improperly admitted because he failed to object at the multiple offender hearing. See also, La.C.Cr.P. art. 841. Based on the foregoing, defendant has waived his right to argue this error on appeal.
Finally, defendant complains that the habitual offender proceeding was premature because his underlying conviction is not final, since it is still on appeal. In support of his position, defendant cites State ex rel. Jackson v. Donnelly, 486 So.2d 729 (La.1986). However, defendant's reliance on this case is misplaced. Defendant is complaining herein about the lack of finality of his underlying conviction. In Donnelly, the lack of finality was to a predicate conviction.
*986 Moreover, the argument that the underlying conviction must be disposed of on appeal before an enhanced sentence may be imposed has been rejected by the Louisiana Supreme Court in State v. Martin, 316 So.2d 740 (La.1975).
Based on the foregoing, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In defendant's final assignment of error, he argues that, alternatively, his trial counsel was ineffective in failing to object to the lack of proof in the multiple offender proceeding. As noted, defense counsel failed to respond to the multiple offender bill of information, make objections to the lack of Boykin transcripts or object to the introduction of the arrest registers. Defendant argues that those failures made his trial counsel's performance deficient.
Notwithstanding a defense counsel's deficient performance, in order to prevail on a claim of ineffective assistance of counsel, a defendant must also show that the deficiency prejudiced him. To meet the burden of showing prejudice, a defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome would have been different. Strickland v. Washington, supra.
To prove that a defendant is a multiple offender, the state must establish, by competent evidence, that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Williams, 98-651 (La.App. 5 Cir.2/10/99), 729 So.2d 14. The state may establish the element of the defendant's identity by various means, such as the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the accused with those in the record of prior proceedings or photographs contained in a duly authenticated record. State v. Bailey, 97-302 (La.App. 5 Cir.4/28/98), 713 So.2d 588, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971.
Where the prior conviction was obtained pursuant to a plea of guilty, the state must meet the burden of proof outlined by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769 (La.1993). According to Shelton, if a defendant denies the allegations in the multiple offender bill of information, the state has the burden of proving the existence of the prior guilty plea and that defendant was represented by counsel when the plea was taken. Once the state meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the plea. If the defendant meets this burden, the state must prove the constitutionality of the prior plea by producing either a "perfect" transcript of the Boykin colloquy between the defendant and the trial judge or any combination of a guilty plea form, a minute entry, or an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the state to determine whether the state met its burden of proof that defendant's prior guilty plea was informed and voluntary. Shelton at 779-780; State v. Williams, 729 So.2d at 19.
In the instant case, the state introduced the original records of the predicate convictions, which contain waivers of rights forms signed by defendant, as well as minute entries indicating that defendant was advised of his rights and waived those rights before entering the guilty pleas. Thus, this evidence was sufficient to meet the state's initial burden. At that point, defendant had the burden to show an infringement of his rights or of a procedural irregularity in the taking of the guilty pleas. State v. Shelton, supra. The defendant did not present any evidence to meet this burden of proof. Furthermore, defendant has failed to argue any infringement of his rights or procedural irregularities *987 on appeal. Therefore, defense counsel's failure to object to the lack of Boykin transcripts, even if deficient, would not have changed the outcome.
With regards to the admissibility of the arrest registers, in State v. Lee, (La.App. 2 Cir.1991), 577 So.2d 1193, 1196, the Second Circuit Court of Appeal held that an original fingerprint card was admissible in a defendant's trial under the public record exception to the hearsay rule in La. C.E. art. 803(8). Further, we have previously held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony. State v. Hollins, 99-278 (La.App. 5 Cir.8/31/99), 742 So.2d 671.
In the instant case, the multiple offender bill of information alleged that defendant was a fourth felony offender because: (1) defendant had pled guilty to attempted simple burglary on February 13, 1985, in Jefferson Parish case number 84-2228; (2) defendant had pled guilty to simple burglary on November 16, 1992, in Jefferson Parish case number 92-4000; (3) defendant had pled guilty to simple burglary of an inhabited dwelling on January 28, 1994, in Jefferson Parish case number 93-4370; and (4) defendant had been convicted of possession with intent to distribute cocaine on August 15, 1997, in Jefferson Parish case number 97-3678 (the underlying offense).
The state established the defendant's identity in these predicate offenses through the testimony of Captain Merrill Boling of the Jefferson Parish Sheriff's Office, who was accepted as an expert fingerprint analyst at the multiple offender hearing. His testimony linked the defendant, via his fingerprints, to the three predicate convictions and the underlying conviction by the introduction of the prior records.[2]
Defense counsel's failure to object to the admissibility of the arrest registers, even if deficient, would not have changed the outcome because the certified copies of the documents would have been admissible pursuant to La. C.E. art. 803(8), the public records exception to the hearsay rule.
Accordingly, defendant's third assignment of error is without merit.

ERROR PATENT DISCUSSION
Pursuant to La. C.C.P. art. 920, the record was reviewed for errors patent.
First, we note that the second and third predicate offenses in the multiple offender proceeding are out of sequence.
La. R.S. 15:529.1(A), provides, in pertinent part:
(1) Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(Emphasis added.)
The Louisiana Supreme Court, in State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), on reh'g, determined that La. R.S. 15:529.1 contains a sequential requirement for enhanced penalties in the sentencing of multiple offenders. See also State v. Soler, 636 So.2d at 1084. According to the Mims court, "[t]he cornerstone of that scheme is that felons graduate to second offender status, not by committing multiple crimes, but by committing a crime or crimes after having been convicted." Id. at 650. (emphasis as found in the original).
In the instant case, the bill of information in the second predicate offense, 92-4000, charges defendant with committing simple burglary on July 18, 1992. The commitment and waiver of rights form reflect that defendant pled guilty to that offense on November 16, 1992. According to the bill of information for the third predicate offense, 93-4370, defendant committed *988 simple burglary of an inhabited dwelling on March 24, 1992, and pled guilty to that offense on January 28, 1994. Therefore, defendant had not been through the required sequencing because the commission of the third offense (March 24, 1992), occurred before the conviction for the second predicate offense (November 16, 1992). As a result, defendant should not have been found to be and sentenced as a fourth felony offender. In such cases, the remedy is to vacate the enhanced sentence and to remand the matter for the trial court to correct the problem by re-sentencing the defendant as a third felony offender.[3] See State ex rel. Mims v. Butler, 601 So.2d at 655.
It is also noted that the trial court failed to vacate the original sentence. The trial court is required to vacate a defendant's previous sentence prior to imposing an enhanced sentence on the defendant as a multiple offender. State v. White, 354 So.2d 1360 (La.1978). Where the original sentence on the underlying offense has not been vacated at the time of defendant's sentencing as a habitual offender, the original sentence remains in effect and the subsequent sentence as a multiple offender is null and void. State v. Thomas, 98-1298 (La.App. 5 Cir.4/27/99), 734 So.2d 140. On remand, the trial court must vacate defendant's original sentence before imposing the new multiple offender sentence.
It is further noted that defendant's habitual offender sentence is illegally lenient because the trial court did not impose the sentence without benefit of probation, parole, or suspension of sentence.[4] A habitual offender sentence is to be served without benefit of probation or suspension of sentence, as required by La. R.S. 15:529.1(G). Additionally, third and fourth felony offenders, who are sentenced pursuant to La. R.S. 15:529.1(A)(1)(b)(ii) and La. R.S. 15:529.1(A)(1)(c)(ii), respectively, should also be sentenced without the benefit of parole eligibility. Because of the sequencing problem with the offenses in case numbers 93-4370 and 92-4000, defendant is subject to sentencing as a third felony offender only.
Accordingly, for the foregoing reasons, defendant's conviction and sentence on the underlying charge, possession with the intent to distribute cocaine, are hereby affirmed. Defendant's sentence in the multiple offender proceeding is vacated. The matter is remanded to the trial court for re-sentencing defendant as a third felony offender.
ORIGINAL CONVICTION AND SENTENCE AFFIRMED; MULTIPLE OFFENDER SENTENCE VACATED; REMANDED FOR RE-SENTENCING.
NOTES
[1] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[2] Captain Boling analyzed and matched defendant's fingerprints with prior fingerprint cards, prior arrest registers and his fingerprints on prior bills of information.
[3] Proof of the discharge dates of these predicate offenses was not necessary in this case because less than the ten-year cleansing period had elapsed between defendant's conviction on each predicate felony and the commission of each subsequent predicate felony. This is true regardless of whether the felony in 92-4000 or 93-4370 is used to find defendant a third felony offender.
[4] While the commitment reflects that the sentence was imposed without benefit of probation, parole, or suspension of sentence, the transcript does not so reflect. Where there is a discrepancy between the transcript and the minute entry, the transcript will prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983).