794 So.2d 1 (2001)
STATE of Louisiana
v.
Austin DYER.
No. 00-KA-1866.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
*4 Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, Attorney for Defendant/Appellant, Austin Dyer.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Vincent Paciera, Jr., Gregory M. Kennedy, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee, The State of Louisiana.
Panel composed of CHEHARDY, ROTHSCHILD and SCHOTT, Pro Tempore.
CHEHARDY, Judge.

STATEMENT OF THE CASE
On July 2, 1998, the Jefferson Parish District Attorney filed a bill of information charging defendant, Austin Dyer, with one count of armed robbery, a violation of La. R.S. 14:64. On July 9, 1998, defendant was arraigned and entered a plea of not guilty. On October 21, 1998, defendant's motion to suppress identification and motion to suppress oral statements were heard and denied. That same day, a twelve-member jury was selected and sworn. After the conclusion of trial and their deliberations, on October 22, 1998, the jury found defendant guilty as charged. On November 5, 1998, the trial court sentenced defendant to serve fifty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.
On November 9, 1998, the state filed a multiple offender bill of information alleging that defendant's penalty on the underlying felony conviction should be enhanced because he had three previous felony convictions. On November 20, 1998, defendant denied the allegations of the multiple offender bill of information. On January 8, 1999, the state filed an amended multiple offender bill of information alleging that defendant had four previous felony convictions. That same day, defendant again denied the allegations of the multiple offender bill of information.
On June 4, 1999, after a hearing on the multiple offender bill of information, the trial court took the matter under advisement. On July 2, 1999, the trial court found that defendant had two previous convictions which could be used to enhance the penalty for his underlying felony conviction. On September 10, 1999, the trial court, based on its previous finding that defendant was a third felony offender, sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant sought an out-of-time appeal, which was granted on October 18, 2000.[1]

FACTS
At about 11:00 a.m. on Saturday, October 25, 1997, Barbara Heitmeier was working alone at her retail store, the Oldies but Goodies Antique Shop on the Westbank Expressway in Marrero, when two men entered the store. The two men, one later described as heavy-set and one described as skinny, looked around the store for about twenty to thirty minutes. The *5 heavy-set man, later identified as Troy Slater, asked if the store delivered. Mrs. Heitmeier told him no. Before leaving, Slater told Mrs. Heitmeier that they would be back with a truck.
Later that afternoon, at about 2:15 p.m., the two men returned. Mrs. Heitmeier was waiting on other customers when the men arrived, but the two men indicated that they were waiting for their mother to come to the shop to look at a bed before they purchased it. After all the other customers left the store, Slater asked Mrs. Heitmeier if the bed could be disassembled. When she knelt down to check, he put a gun to her head and said, "Don't move. Don't get up. Don't turn around; don't look at my face."
Next, after making sure that there were no other customers in the store, he led Mrs. Heitmeier to the store's bathroom and forced her inside. Slater removed a diamond pendant from Mrs. Heitmeier's neck and demanded her watch, which he took from her wrist. Slater ordered Mrs. Heitmeier to remain in the bathroom and shut the door. Shortly thereafter, Slater opened the door and ordered her to open the cash register.
After she exited the bathroom, with Slater leading her to the cash register, Mrs. Heitmeier saw the skinny perpetrator on the customer-side of the counter. When she opened the cash register, the skinny perpetrator, who was later identified as Austin Dyer, the defendant in this case, leaned over the counter and removed the money. Slater then asked the victim for her car keys and she turned the keys over to defendant.
Slater then demanded more money while he continued to search the store. After threatening that he would be back if she called the police, he led Mrs. Heitmeier back to the bathroom. At that point, Mrs. Heitmeier looked through the store's front window and saw defendant behind the wheel of her car, ready to drive out of the parking lot.
Four days later, on October 29, 1997, while on routine patrol, Deputy Michael Jones spotted a black four-door Cadillac with a license plate matching that of Mrs. Heitmeier's stolen car traveling westbound in the 6200 block of the Westbank Expressway. He turned on his lights in an attempt to stop the vehicle, but the driver sped up. After making several turns to avoid being stopped, the driver ended up on a dead-end street. He exited the vehicle and fled on foot. The driver, later identified as defendant, was picked up a few blocks away by other police officers that had joined the pursuit.
In December of 1997, Detective Russell Brunet, the lead investigator on the case, received a tip from a confidential informant that Troy Slater had committed a string of armed robberies in the Marrero area. Detective Brunet compiled a photographic array to show the victim. Mrs. Heitmeier identified Slater from the photographic lineup. As a result of the identification, Slater was arrested.
On December 30, 1997, Slater gave a statement to Detective Daniel O'Neil of the Jefferson Parish Sheriffs Office, confessing to numerous armed robberies, including the robbery at the Oldies but Goodies Store. He stated that his accomplice for that robbery was a man known to him as "Black" who "got busted in the car." Based on that information, Detective Brunet compiled a photographic array including defendant's picture. Mrs. Heitmeier identified defendant in the photographic lineup as the skinny perpetrator.
At trial, Mrs. Heitmeier testified that she was sure that defendant was the man who had taken the money from the cash register and to whom she had given her *6 car keys because he had spent approximately an hour in her store that day. She also testified that it was daylight when she was robbed and she also had ample lighting in her store.
Troy Slater, a witness for the state, admitted that he had pled guilty on October 14, 1998 to five counts of armed robbery, including the Oldies but Goodies Store. Initially, he refused to implicate defendant, then admitted that, at his guilty plea proceeding, he had assented to the facts as recited by the district attorney, including that defendant was his accomplice for the Oldies but Goodies robbery.
At trial, defendant testified on his own behalf. He admitted that he was convicted in November of 1993 of "entering an auto" and in January of 1994 for "possession of stolen property." He also admitted that he was arrested for possession of the victim's stolen car. He claimed that he did not know that the car was stolen but he knew that a guy named Derrick had rockrented[2] the car the previous night. Defendant stated that he had helped Derrick by replacing the car's stolen battery and he was just test-driving the car to make sure that it was running correctly when he was stopped. Defendant denied robbing the Oldies but Goodies Store on October 25, 1997.

DISCUSSION
In defendant's first assignment of error, he argues that he received an excessive sentence. As noted by the state on appeal, defense counsel did not verbally object to the multiple offender sentence when it was imposed and did not file a motion to reconsider sentence.
La.C.Cr.P. art. 881.1(D) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
However, in State v. Mims, 619 So.2d 1059, 1060 (La.1993), the Louisiana Supreme Court decided that failing to file a motion to reconsider relegates a defendant to a "bare claim of excessiveness." We have previously considered whether a defendant's sentence is constitutionally excessive where the defendant failed to file a motion to reconsider. See, for example State v. Perkins, 99-1109 (La.App. 5 Cir.4/25/00), 762 So.2d 67, and State v. Jackson, 99-1368 (La.App. 5 Cir.5/17/00), 762 So.2d 253.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lassere, 95-1009 (La.App. 5 Cir.10/1/96), 683 So.2d 812, 821, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id.
La. R.S. 15:529.1(A)(1)(b)(ii) provides that:
If the third felony or either of the two prior felonies is a felony defined as a *7 crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In this matter, defendant was found to be a third felony offender, to have a prior felony drug offense punishable by imprisonment for more than five years, and to have committed a crime of violence.[3]
The Louisiana Supreme Court has repeatedly upheld the constitutionality of Louisiana's Habitual Offender Law. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). In State v. Johnson, the Supreme Court presented guidelines on downward departures from the minimum sentence mandated by the Habitual Offender Law.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.
* * *
Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id. at 676, 677. (Citations omitted).
At the multiple offender hearing in this case, the state presented evidence that defendant had three previous convictions: defendant pled guilty on November 16, 1993, in case number 93-B-1395-5 of the Superior Court of Gwinnett County, Georgia, to eight counts of "entering an automobile with the intent to commit a theft" (equivalent to La. R.S. 14:62, a felony under Louisiana law); defendant pled guilty on February 14, 1994, in case number 93-B-2052-5 of the Superior Court of Gwinnett County, Georgia, to misdemeanor theft by receiving stolen property; and defendant pled guilty on June 8, 1995, in case number 94-CR-4702-9 of the Superior Court of DeKalb County, Georgia, to violating the Georgia Controlled Dangerous Substances Act by possessing and selling cocaine on September 30, 1994 (equivalent to La. R.S. 40:967(A) and 40:967(C)).
After taking the matter under advisement, on July 2, 1999, the trial court ruled that defendant's misdemeanor guilty plea could not be used to enhance the punishment for his underlying felony and found defendant to be a third-time felony offender. *8 On September 10, 1999, defendant was sentenced as a third-time felony offender to life imprisonment without benefit of parole, probation, or suspension of sentence.
At the sentencing proceeding, defendant did not argue for a downward departure from the mandatory minimum sentence. He also did not present any evidence to rebut the presumption that the mandatory minimum sentence mandated by the Legislature is constitutional.
On appeal, defendant contends that he should not be punished so severely because the victim was not physically injured during the robbery and that his prior crimes were not crimes of violence. While the victim in this case may not have suffered physical injuries, the record is clear that she suffered emotional harm from the armed robbery.
Upon review, it is also clear that defendant has failed to provide any "unusual circumstance" which would support a downward departure from the mandatory minimum sentence. Accordingly, we find no merit to defendant's claim that the mandatory sentence imposed is excessive.
In his second assignment of error, defendant argues that the trial court improperly denied his motion to suppress the identifications because the photo identification was "tainted by the earlier show up [sic] identification when the victim's car was recovered." Defendant also argues that there was a serious likelihood of misidentification by the victim because she did not have "that much of an opportunity to view the skinny suspect" during the armed robbery and that several months had gone by between the time of the robbery and the time of the identification.
At the suppression hearing on October 21, 1998, the victim, Barbara Heitmeier testified that when she was robbed at gun-point in her store on October 25, 1997, she got a good look at both of the men who robbed her. She testified that the robbery occurred at about 2:30 p.m. and that there was good light in her store. She stated that she remembered the men because they had been in her store earlier that day. Further, she testified that she was face-to-face with defendant when he took her car keys.
Mrs. Heitmeier further testified that on January 5, 1998, Detective Russell Brunet brought six photographs to her home and asked if she was able to identify anyone in the photographs. After viewing the photographic lineup, she identified one of the men as the "skinny" perpetrator. She testified that she was not told that she had to pick any of the pictures nor was she led to identify any certain picture by Detective Brunet.
Detective Brunet testified that he compiled the photographic array from the "automatic fingerprint identification system," which is a computer-accessed databank of photographs taken of arrestees. The detective testified that he chose photographs of individuals from a pool of about two hundred photographs that fit the general description of the "skinny" suspect in the robbery. The photograph of defendant that was used in the photographic lineup was taken when defendant was arrested on October 29, 1997 for possession of a stolen vehicle.
Detective Brunet testified that, when he showed Mrs. Heitmeier the photographic lineup, he laid the page with all six photographs on the table in front of her, asked her to review all six photographs carefully, and asked if she recognized anyone. He stated that she positively identified defendant as one of the men who robbed her.
In State v. Bright, 98-398 (La.4/11/00), 776 So.2d 1134, the Louisiana Supreme Court stated:

*9 An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. The question for a reviewing court is to determine whether the procedure is so conducive to irreparable misidentification that due process was denied.
Bright, 776 So.2d at 1145. (Citations omitted).
A defendant challenging an identification procedure must prove that the identification was suggestive and that there was a substantial likelihood of misidentification. State v. Lowenfield, 495 So.2d 1245, 1253 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); State v. Calloway, 97-796 (La. App. 5 Cir. 8/25/98), 718 So.2d 559, 564. Further, "strict identity of physical characteristics among the persons depicted in the photographic array is not required; all that is required is a sufficient resemblance... in articulable features of the pictures such as height, weight, build, hair color, length and texture, facial hair, skin color and complexion; and the shape and size of the nose, eyes, lips, etc." to reasonably test the identification. State v. Every, 96-185 (La.App. 5 Cir.7/30/96), 678 So.2d 952, 957.
Even if the identification procedure is found to be suggestive, this alone does not violate due process, for it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Calloway, supra. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977); State v. Calloway, supra.
The factors to be considered in assessing reliability were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors.
The initial inquiry is whether defendant proved that the identification was suggestive. On appeal, defendant contends that the identification by Mrs. Heitmeier was suggestive because it was tainted by the earlier identification when the victim's car was recovered. However, Mrs. Heitmeier testified at the suppression hearing that when her car was recovered four days after her store was robbed, she was taken to the scene by a policeman to identify her car, but she was not shown the person who was in her car when it was recovered.
Mrs. Heitmeier's statement that she saw defendant in her car, which defendant refers to on appeal, occurred during trial. The assistant district attorney asked Mrs. Heitmeier in his final question on redirect examination: "Any question in your mind that this is the guy that went in with the guy with the gun, this is the guy that took the money out the register, that this is the guy that was in your Cadillac?" Mrs. Heitmeier responded: "No." Clearly when Mrs. Heitmeier testified that she had no doubt that she saw defendant in her car, she was referring to the period of time *10 when she was being robbed, not when her car was recovered.
A review of the photographic array containing the picture of defendant does not support a conclusion that it unduly focuses attention on defendant. Further, there is sufficient physical similarity among the persons depicted to reasonably test Heitmeier's identification. We therefore find that the photo array did not unduly focus Mrs. Heitmeier's attention on defendant, and was not suggestive.
We further find that there was no substantial likelihood of misidentification. Mrs. Heitmeier testified that she had an opportunity to see defendant twice in the same day at her store for a total of about an hour. She saw him face-to-face when he took her car keys. She positively identified defendant from the photographic lineup when it was shown to her, and also positively identified defendant at trial. Accordingly, we find that the trial court did not err in denying defendant's motion to suppress the identification.
In his third assignment of error, defendant argues that he was denied a fair trial when the trial court refused to allow Levar Herron to testify as an alibi witness.
On the second day of trial, defense counsel informed the trial court and the district attorney that he wished to offer the testimony of Levar Herron as an alibi witness. The previous day, counsel had given the witness's name to the trial court and the state, but he did not inform the state that Herron would be an alibi witness. When defense counsel attempted to call the witness, the state opposed the defense request, claiming surprise and the inability to properly investigate the witness and meet the alibi defense. Defense counsel argued that Herron would testify for "five minutes" that he gave defendant a haircut at 11:00 a.m. on Saturday, October 25, 1997, to corroborate defendant's alibi for the morning of the robbery.
Pursuant to La.C.Cr.P. art. 727, the trial court excluded the testimony, reasoning that defense counsel had not established good cause to grant an exception to the general rule of exclusion for failure to comply with the requirements of La. C.Cr.P. art 727, which provides, in pertinent part:
A. Upon written demand of the district attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.
B. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.
C. If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under Subsection A or B, the party shall promptly notify the other party or his attorney of the existence and identity of such additional witness.

*11 D. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.
E. For good cause shown, the court may grant an exception to any of the requirements of Subsections A through D of this Section.
In evaluating whether a party has established good cause for failing to comply with notice requirements for alibi witnesses,
a district court should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors rising out of the circumstances of the case.
State v. Ether, 572 So.2d 689, 690 (La.App. 4 Cir.1990).
In this case, the record reflects that three other alibi witnesses testified for defendant. Defendant's mother and aunt testified that defendant went to get his hair cut on Saturday, October 25, 1997 at about 11:00 or 11:30 a.m., then returned to his mother's house. After that, he ran a few errands for his mother, then stayed around the house with his family until about 5:00 p.m. that day. Ivory Scott, defendant's uncle, also testified that when he arrived at defendant's mother's house at about 3:30 p.m., defendant was at the house.
The excluded testimony from Herron, who would have testified that defendant got a haircut at 11:00 on Saturday morning, would have been cumulative of the testimony from defendant's mother and aunt. Moreover, while Herron's testimony could have accounted for defendant's whereabouts Saturday morning, Herron's testimony could not have accounted for defendant's whereabouts during the armed robbery, which occurred more than three hours later.
Based on the foregoing, we find that the trial court did not abuse its discretion in disallowing the testimony of Levar Herron.
In his fourth assignment of error, defendant contends that the trial court erred in allowing the state to present testimony from Detective Brunet that was inadmissible hearsay. He specifically contends that the trial court improperly allowed Detective Brunet to testify that defendant became a suspect in the armed robbery after Troy Slater implicated a man named "Black" who was caught with the robbery victim's stolen car. He argues that the state used the Detective's testimony for the truth of the words spoken and was, therefore, inadmissible.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. arts. 801(A)(1) and 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; State v. Williams, 98-1006 (La.App. 5 Cir.3/30/99), 735 So.2d 62, 75. A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Williams, supra.
*12 A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the officer. State v. Watson, supra at 1328; State v. Williams, supra.
At trial, the state presented testimony from Detective Brunet about his investigation of the armed robbery that occurred at the Oldies but Goodies Store. When the assistant district attorney asked Detective Brunet about a statement by Troy Slater after he was arrested for the armed robbery, defense counsel objected on several bases, including hearsay. The state argued that the testimony was not being offered for the truth of the words spoken because Mr. Slater was going to testify later to the substance of the statement. The state was only offering the testimony to show some of the information that the officer received which guided the investigation. The trial judge overruled the objection, but directed the state to "short circuit that a little."
Detective Brunet then testified that a suspect in several armed robberies named Troy Slater gave a statement after he was arrested implicating a man named "Black" as his accomplice in the robbery of the Oldies but Goodies Store. Slater also stated that "Black" was the same person who was later arrested while driving the car stolen during the robbery. Detective Brunet testified that based upon that information, he compiled a photographic array, including defendant's picture, to show to the victim.
Upon review, we find that Detective Brunet's testimony was not hearsay, as it was offered to explain the sequence of events which led to defendant's arrest, not to prove the truth of the assertion that defendant was an accomplice in the armed robbery.
In his final assignment of error, defendant argues that the evidence presented by the state was insufficient to convict him of armed robbery.
The appropriate standard of review for determining the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Supreme Court explained that when evaluating the sufficiency of the evidence, the reviewing court must determine, after viewing the direct and circumstantial evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id.; see also State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722; State v. Jackson, 99-1256 (La.App. 5 Cir.7/25/00), 767 So.2d 848, 855.
Defendant was convicted of one count of armed robbery, a violation of La. R.S. 14:64. To prove armed robbery, the state must show that defendant took something of value from another while armed with a dangerous weapon. State v. Watts, 99-311 (La.App. 5 Cir.8/31/99), 746 So.2d 58, 63. In proving the above elements, the production of a weapon or other physical evidence is not required as long as the state can establish all the elements beyond a reasonable doubt through the testimony of its witnesses. Furthermore, we have held that the testimony of the victim, as the only eyewitness to the crime, is sufficient to establish the elements of an offense. State in the Interest of C.D., 95-160 (La.App. 5 Cir.6/28/95), 658 So.2d 39, 41.
A person need not hold the weapon or perform the taking to be guilty of *13 armed robbery under the law of principals. La. R.S. 14:24; State v. Jackson, supra. In order to support a defendant's conviction as a principal, the state must show that defendant had the requisite mental state for the crime. State v. Brooks, 505 So.2d 714, 717 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
In this matter, the victim testified that on Saturday, October 25, 1997, defendant and another man came into her retail store. The other perpetrator put a gun to her head, forced her into the bathroom, and demanded her jewelry. He returned a few seconds later and demanded that she open the cash register. When she opened the cash register, defendant took the money out of the register. Defendant also took her car keys, entered her car, and waited for the armed man in the parking lot. Further, defendant was apprehended four days later while driving the victim's stolen car. Moreover, the victim positively identified defendant in a photographic lineup and at trial as the man who robbed her that day.
In this case, the jury obviously chose to believe the testimony of the victim and the other state witnesses over that of defendant and his alibi witnesses. It is not the function of the appellate court to evaluate the credibility of witnesses and overturn the trial court on its factual determination of guilt. State v. Styles, 96-897 (La.App. 5 Cir.3/25/97), 692 So.2d 1222, 1233. When viewed in the light most favorable to the prosecution, it is clear that the state proved the essential elements of armed robbery and that a rational trier of fact could have found defendant guilty of armed robbery beyond a reasonable doubt.
Finally, pursuant to La.C.Cr.P. art. 920, the record was reviewed for errors patent. Our review reveals one error, necessitating a remand for resentencing.
The transcript of defendant's multiple offender sentencing on September 10, 1999 reveals that the trial court failed to vacate defendant's original fifty year sentence for armed robbery prior to sentencing defendant to a term of life imprisonment as a multiple offender. Where the original sentence on the underlying offense has not been vacated at the time of defendant's sentencing as a habitual offender, the original sentence remains in effect and the subsequent sentence as a multiple offender is null and void. State v. Thomas, 98-1298 (La.App. 5 Cir.4/27/99), 734 So.2d 140, 144. We therefore remand this matter to the trial court for resentencing, with instructions to vacate defendant's original sentence before imposing the multiple offender sentence. State v. Stokes, 99-1287 (La.App. 5 Cir.4/13/00), 759 So.2d 980, 988.
For the foregoing reasons, defendant's conviction and sentence for armed robbery, and the finding that defendant is a third felony offender, are hereby affirmed. This matter is remanded to the trial court for resentencing defendant as a third felony offender.
AFFIRMED; REMANDED.
NOTES
[1] In addition to his counsel filing an appellate brief, defendant requested, and received, additional time to review the record himself and file a pro se brief herein. However, defendant's pro se brief was filed more than two weeks after the due date and well after the case was submitted. Via a separately-issued Order, defendant has been notified of his rights to raise in a post-conviction relief proceeding, any assignment of error which has not been addressed herein.
[2] The defendant testified that a "rock rental" occurs where one party exchanges the use of their automobile for drugs. He denied participation in the "rock rental."
[3] According to La. R.S. 14:2(13)(w), defendant's armed robbery conviction, is a crime of violence referred to in La. R.S. 15:529.1(A)(1)(b)(ii).